William KEEN, Lisa Keen, Oliver Himsel, Karen
Lamere, Clement Lamere, Floyd Lamere, Bertilla
Lamere, and Manfred Engburg, Plaintiffs,

Margaret L. JONES, Plaintiff-Appellant,

v.

DANE COUNTY BOARD OF SUPERVISORS, Dane County
Zoning and Natural Resources Committee and
Payne & Dolan, Inc., Defendants-Respondents.

Court of Appeals

*No. 03–0734. Submitted on briefs October 14, 2003.—
Decided December 23, 2003.*

2004 WI App 26

(Also reported in 676 N.W.2d 154.)

489

490

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert J. Kay* and *Robert A. Mich, Jr.*, of *Kay & Andersen, S.C.*, Madison.

On behalf of the defendant-respondent, Payne & Dolan, Inc., the cause was submitted on the brief of *William F. White* and *Thomas P. Heneghan* of *Michael Best & Friedrich LLP*, Madison.

On behalf of the defendant-respondent, Dane County Corporation Counsel, the cause was submitted on the brief of *David R. Gault*, assistant corporation counsel, Madison.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. DYKMAN, J. Margaret L. Jones appeals from an order affirming the Dane County Board (board) which upheld the decision of the Dane County Zoning and Natural Resources Committee (ZNR) to grant a conditional-use permit. She asserts that ZNR failed to meet the requirements of Dane County Ordinances (DCO) §§ 10.255(2)(h) and 10.123(3)(a)1 and that two ZNR members were impermissibly biased. We reverse and remand with directions for ZNR to consider the factors in § 10.123(3)(a)1 and to reconsider § 10.255(2)(h) because of an impermissibly high risk of bias in the prior deliberations.

## BACKGROUND

¶ 2. Two residents of Verona applied for a conditional-use permit through their agents, Payne &

Dolan, Inc. (P&D) to operate a gravel pit on the their property. ZNR held a lengthy hearing and considered sixty-one conditions before it granted the permit. Minutes from the hearing are the only record of how ZNR reached its decision. Local landowners challenged ZNR's decision and the board and trial court affirmed. Jones, one of the plaintiffs, appeals. Among other things, she alleges that two ZNR members, Lyman Anderson and Carlton Hamre, impermissibly favored P&D. The bias allegations derive from the fact that Anderson had leased his property in Oregon, Wisconsin, to P&D to operate a gravel pit. And Hamre had allegedly endorsed the company by co-signing a letter that vouched for the quality of P&D's work. Hamre signed this letter as Town of Vienna chair in November 2001. P&D included the letter in its application to ZNR for a conditional-use permit. After ZNR issued the permit, Hamre made the following comment to a newspaper:

> There are some operators I wouldn't support, but I've worked with Payne & Dolan before . . . .
>
> . . . I'm sorry for the people who will live close to it, but I can't change my mind on voting for the pit.

Although Hamre has since retired, Anderson currently serves as chair of ZNR.

## STANDARD OF REVIEW

¶ 3. We review the board's affirmance of ZNR's decision using the same standard as the trial court. *Delta Biological Res., Inc. v. BOZA*, 160 Wis. 2d 905, 910, 467 N.W.2d 164 (Ct. App. 1991). While we are not bound by the board's conclusions of law, we will sustain them if reasonable. *Id.* We hesitate to interfere with

administrative determinations and presume they are correct and valid. Therefore, we limit our review to:

> (1) Whether the Board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Id.* (citation omitted).

## DISCUSSION

¶ 4. Jones does not seek review of the merits of ZNR's determination. She challenges only whether ZNR (1) considered the requisite agriculture district factors in DCO § 10.123(3)(a)1; (2) made the findings DCO § 10.255(2)(h) requires; and (3) allowed biased members to deliberate and vote. She claims that these failings render ZNR's determination arbitrary, oppressive and unreasonable and contrary to law.

### a. Agriculture District Considerations

¶ 5. The parties do not dispute that Verona has elected to be an exclusive agriculture district pursuant to DCO § 10.123. Section 10.123(3)(a)1[1] requires ZNR to consider ten factors before issuing a conditional-use

---

[1] Dane County Ordinance § 10.123(3)(a)1 provides in pertinent part:

> In passing applications for conditional use permits the committee shall consider the following relevant factors:
>
> a. The statement of purposes of the zoning ordinance and the A-1 District.
>
> b. The potential for conflict with agricultural use.

permit in an agriculture district. Nothing in the hearing minutes refers to these ten factors. Jones asserts that this shows ZNR did not act according to law. We agree. The sparse record contains no mention of the special concerns for an agriculture district. We have no basis to conclude that ZNR considered those factors.

■■■■■

¶ 6. P&D urges us to presume that the agency considered all the factors the Dane County Ordinances require it to consider. It claims the law presumes the board's decision is valid and correct. "A presumption is a rule of law, statutory or judicial, by which a finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted." *Delta Biological Res., Inc.*, 160 Wis. 2d at 912 (citation omitted). We decline to expand the presumption of validity doctrine such that we presume a basic fact. Affording boards such deference would render judicial review meaningless. We conclude that a record devoid of any reference to the

---

c. The need of the proposed use for a location in an agricultural area.

d. The availability of alternative locations.

e. Compatibility with existing or permitted use on adjacent lands.

f. The productivity of the lands involved.

g. The location of the proposed use so as to reduce to a minimum the amount of productive agricultural land converted.

h. The need for public services created by the proposed use.

i. The availability of adequate public services and the ability of affected local units of government to provide them without an unreasonable burden.

j. The effect of the proposed use on water or air pollution, soil erosion and rare or irreplaceable natural resources.

494

agriculture district factors does not satisfy the requirements of DCO § 10.123(3)(a)1.

¶ 7. P&D also argues that Jones has the burden of demonstrating that ZNR's decision was contrary to law or arbitrary, oppressive, or unreasonable. It claims that the only proof Jones has offered is testimony from an unidentified speaker at the board hearing that stated that ZNR did not consider the agriculture district factors.[2] P&D argues that this testimony is unreliable and not sufficient to overcome the presumption of validity. We do not need to address the reliability of this testimony because the record, or lack thereof, resolves the question of whether ZNR considered the factors in DCO § 10.123(3)(a)1.

¶ 8. P&D contends that ZNR complied with DCO § 10.123(3)(a)1 because it held a lengthy hearing and considered sixty-one conditions for the conditional use. P&D offers no legal authority to support its position that ZNR may consider use conditions rather than the ten factors in § 10.123(3)(a)1. We reject this argument.

¶ 9. Similarly, the board contends that ZNR considered the factors in DCO § 10.123(3)(a)1 when it found that the conditional-use permit complied with

---

[2] An unidentified member of the ZNR Committee stated the following at a subsequent board meeting:

> They never once addressed the point that the Zoning and Natural Resources Committee, of which I am a member, did not address Section 10.123(3)(A) of the Dane County Code of Ordinances, and within there there is ten different factors . . . .
>
> . . . .
>
> . . . We have got to follow our own ordinance and consider those factors. We have got to address those. We can even discuss them. We never discussed them in ZNR. None of those standards or factors were discussed.

DCO § 10.255(2)(h). Section 10.255(2)(h) requires ZNR to find that the conditional use "conform[s] to all applicable regulations of the district in which it is located." The board argues that such a finding encompasses the considerations in § 10.123(3)(a)1. This reasoning, however, eviscerates the special consideration that Verona opted for when it became an agriculture district. If ZNR necessarily considers § 10.123(3)(a)1 when it makes the requisite findings for § 10.255(2)(h), then electing to be an agriculture district becomes meaningless. This result contradicts the plain purpose of distinguishing agriculture from other types of districts. We are not persuaded.

¶ 10. Both P&D and the board suggest that if we conclude that ZNR did not consider the requisite factors in DCO § 10.123(3)(a)1, we will be requiring increased formality in ZNR's deliberations. We disagree. We reverse only because ZNR failed to consider certain factors, not because its considerations lacked formality.

### b. Findings of Fact

■

¶ 11. Jones also asserts that ZNR only approved the considerations in DCO § 10.255(2)(h) and did not actually make findings as required by the ordinance. Both P&D and the board argue that although ZNR used the term "approve" when it addressed § 10.255(2)(h), its determinations constituted findings. We agree. It is immaterial that ZNR used the word "approve" rather than stating that it was making a finding. ZNR specifically addressed and voted on all the concerns in § 10.255(2)(h). Those deliberations constitute findings.

### c. Bias

¶ 12. Jones claims that two members of ZNR were impermissibly biased. Specifically, she contends Anderson and Hamre were not impartial decisionmakers because of their prior business relationships with P&D. She argues that Hamre expressed a "personal and close feeling about" P&D's work in his letter that supported P&D's application. She also contends that his comments to the press reveal prejudgment of the issues. Accordingly, she claims that all of ZNR's deliberations were fatally flawed because of bias.

¶ 13. Both P&D and the board argue that Jones' evidence does not overcome the presumption of honesty and integrity we afford ZNR. They claim that Hamre's letter simply shows that he was familiar with the quality of P&D's work, which is the kind of experience and knowledge zoning committees often utilize in deliberations. The board also contends that merely forming an opinion prior to a hearing does not constitute prejudgment under *State ex rel. DeLuca v. Common Council*, 72 Wis. 2d 672, 690, 242 N.W.2d 689 (1976).

¶ 14. To act in accordance with law, a decisionmaker must comport with the "common law concepts of due process and fair play." *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 24, 498 N.W.2d 842 (1993). A decisionmaker violates due process and fair play by harboring bias, or an impermissibly high risk of bias, or prejudging the facts or the application of the law. *Id.* at 25 (citation omitted). The Wisconsin Supreme Court applied this rule in *Marris*, where a board member made several prejudicial statements about a permit applicant, including that he wanted "to get [the applicant] on the Leona Helmsley rule." *Id.* at 28–30. Those remarks

497

overcame the presumption of honesty and integrity that would ordinarily lie. *Id.* at 30. Accordingly, the court vacated the board's decision because the bias violated due process.

¶ 15. Hamre became an advocate for P&D when P&D submitted his letter as part of its permit application. He cannot be both an advocate and an impartial decisionmaker on this issue. In the letter, Hamre proclaimed P&D "has always stood out above the rest in their efforts and success in being a good corporate citizen and caretaker of the land." Hamre's "close and personal view" promotes P&D's good track record and recommends them as a good business to operate a gravel pit in the community. This advocacy surpasses merely forming an opinion about a subject and overcomes the presumption of integrity and honesty. We conclude the letter evidences an impermissibly high risk of bias.

¶ 16. Because the letter evidences an impermissibly high risk of bias, we do not reach the board's claims that the newspaper article Jones references was not part of the record before this appeal or P&D's argument that Hamre's comments after the decision are irrelevant.

¶ 17. Jones also asserts that Anderson was impermissibly biased in favor of P&D. Although Hamre's impermissibly high risk of bias alone warrants reversal, we will also address Jones' allegations against Anderson because her brief informs us that Anderson still serves as chairman of the ZNR. Therefore, we need to clarify whether Anderson may deliberate and vote in the rehearing.

¶ 18. The parties do not dispute that Anderson had leased his property to P&D for the operation of a

gravel pit. Jones claims that Anderson benefited from "financially assisting his long-term business partner" and "avoiding the appearance of hypocrisy had he denied a gravel pit operation while maintaining one on his own property."

¶ 19. Both P&D and the board maintain that Anderson's lease is unrelated to the conditional-use permit at issue in this case. They also contend that Anderson has an economic interest in not allowing P&D to operate a gravel pit in Verona because it would compete with his own. They argue that Anderson's lease with P&D does not rebut the presumption that Anderson acted with honesty and integrity.

¶ 20. We conclude that Anderson's lease with P&D does not constitute impermissible bias. Unlike the board member in *Marris*, Anderson's lease with P&D does not evidence bias. The lease was an independent, prior business transaction unrelated to the property at issue. *Marris* does not require board members to have no prior dealings with applicants; rather, the court recognized the localized nature of county boards and that members "can be expected to have opinions about local zoning issues." *Id.* at 26. Similarly, members may have conducted business with applicants that appear before them, as in Anderson's case. We conclude the property lease alone does not suffice to meet the standard of *Marris*.

## CONCLUSION

¶ 21. We conclude that ZNR complied with DCO § 10.255(2)(h) by making the requisite findings, despite using the term "approve." However, because Hamre's letter evidences an impermissibly high risk of bias and

he participated in making those findings, we reverse with directions for ZNR to reconsider § 10.255(2)(h) without Hamre. We do not preclude Anderson's participation. Likewise, we direct ZNR to consider the factors DCO § 10.123(3)(a)1 requires before issuing a conditional-use permit for the operation of a gravel pit.

*By the Court.*—Order reversed and cause remanded with directions.