Michelle WILLIAMS, Plaintiff-Respondent,

v.

HOUSING AUTHORITY OF the CITY OF MILWAUKEE,
Defendant-Appellant.

Court of Appeals

*No. 2009AP435. Submitted on briefs December 1, 2009.
—Decided December 22, 2009.*

2010 WI App 14

(Also reported in 779 N.W.2d 185.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher P. Riordan* and *Douglas M. Raines* of *von Briesen & Roper, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *A.G. Hartman* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Michelle Williams filed a writ of certiorari in Milwaukee County Circuit Court, arguing that the Housing Authority of the City of Milwaukee's denial of her application for rent assistance was not

based on sufficient evidence. The Housing Authority denied Williams's application because she had been found guilty, upon default judgment following a no contest plea, to municipal citations for disorderly conduct, and assault and battery. The circuit court granted Williams's writ of certiorari on the grounds that the Housing Authority based its decision solely on uncorroborated hearsay. We agree with the circuit court and affirm.

## BACKGROUND

¶ 2. On September 8, 2004, Williams was issued two citations following an incident at a Milwaukee restaurant where she was employed: a citation for disorderly conduct and another for assault and battery. Recording the statement of a witness on the back of the disorderly conduct citation, the responding police officer wrote that after Beth Koceja, Williams's manager at the restaurant, fired Williams:

> Williams shouted "F— you, [b]itch, I'm going to beat your f—ing [ass]." Williams struck Koceja with a phone then followed her into the [illegible] office [illegible] slapped her once in the face. Williams knocked items off the [r]estaurant counter tops as customers were exiting causing a large disturbance.

¶ 3. Williams went to municipal court to contest the citations, but the complainant, Koceja, did not appear, and the matter was adjourned and rescheduled. On the new hearing date, Williams failed to appear because she had lost her job, was homeless and was living in a shelter. She testified that she tried to re-open the citations later but was told she could not. The municipal court entered a no contest plea on her behalf and found her guilty upon default judgment in January 2005.

¶ 4. Williams filed an application for rent assistance through the Housing Authority's Housing Choice Voucher Program in 2007. Her application was denied in July of that same year, following a criminal background check, because of her municipal citations for disorderly conduct, and assault and battery.

¶ 5. In August 2007, the Housing Authority held an informal hearing at Williams's request, to review its denial of her application. At that hearing, the Housing Authority offered the citations into evidence. The citations included the officer's notes of the witness's statement.

¶ 6. Williams testified during the hearing as follows:

> Personally I would like to say that I am not a bad person. And I know ... what you heard is really incriminating against me. On that incident, the day that happened, yes, I was fired from George Webb and upon leaving there was a public phone in George Webb and I was calling for a ride. I had no problem. I was not upset. I was only mad because I knew that I was fired unjustly, unfairly. There was no reason for her to fire me. And I was on the phone and it was in the back of the store. There [are] two bathrooms in the back of the room to the kitchen area. She came back there and she hung up my phone call. And then she proceeded to start grabbing me and pulling me and yelling at me and telling me to get out of the store. She was blocking my way. And I asked her to please get your hands off of me. I asked her twice. I did not slap her. I did not hit her. I didn't push her out of my way because she started pointing her arms and yelling at me. I left the store and proceeded to go home.

¶ 7. In a written decision issued in October 2007, the Housing Authority upheld the denial of Williams's application for rent assistance, finding that:

[Williams] displayed extremely disturbing behavior in a public place, distressing the customers. She also made threats of bodily harm to the restaurant manager and hit her with the telephone, per the citation. [Williams] claimed that she did not become violent towards the manager; however, [Williams] did not appear in court to dispute it. As such, the denial shall be upheld.

¶ 8. Williams sought certiorari review of the Housing Authority's decision, arguing that it lacked sufficient evidence to support its decision because it relied entirely on uncorroborated hearsay. The circuit court agreed, granting the writ. The Housing Authority appeals.

### Discussion

¶ 9. When we review an application for a writ of certiorari, we review the agency's decision, not the decision of the circuit court. *Kraus v. City of Waukesha Police & Fire Comm'n*, 2003 WI 51, ¶ 10, 261 Wis. 2d 485, 662 N.W.2d 294. The scope of certiorari review is limited to whether the Housing Authority: (1) kept within its jurisdiction; (2) proceeded on a correct theory of law; (3) was arbitrary, oppressive, or unreasonable; or (4) might reasonably have made the order or finding based on the evidence. *See id.*

¶ 10. In seeking certiorari review, Williams challenged whether the Housing Authority's decision was arbitrary, oppressive, or unreasonable; and whether the Housing Authority reasonably made the order based on the evidence. Both questions require us to determine whether the Housing Authority's decision is founded on sufficient evidence. *See State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 651–52, 275 N.W.2d 668

(1979). "The sufficiency of evidence on review by common law certiorari is identical to the substantial evidence test used for the review of administrative determinations under [WIS. STAT.] ch. 227."[1] *Harris*, 87 Wis. 2d at 652. "Under this standard a court does not pass on questions of credibility, nor does it weigh the evidence. The test is whether the evidence reasonably supports the decision." *Id.* If we conclude that the Housing Authority's decision is not supported by sufficient evidence, we may overturn it. *Cf. Village of Menomonee Falls v. Wisconsin DNR*, 140 Wis. 2d 579, 594, 412 N.W.2d 505 (Ct. App. 1987).

■

¶ 11. The Housing Authority may properly deny admission to its rent assistance program to an individual who has engaged in either "[v]iolent criminal activity" or "[o]ther criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity." 24 C.F.R. § 982.553(a)(2)(ii) (2009). The issue on appeal is whether the Housing Authority's decision to deny Williams's rent assistance application, as set forth in its written decision, is supported by sufficient evidence in the record. Because the Housing Authority based its factual findings on the responding police officer's written report on the back of the September 2004 citation, we conclude that its findings are not supported by sufficient evidence and affirm the grant of Williams's writ of certiorari.

¶ 12. In its written decision, the Housing Authority found that in September 2004:

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[Williams] displayed extremely disturbing behavior in a public place, distressing the customers. She also made threats of bodily harm to the restaurant manager and hit [the manager] with the telephone, per the citation. [Williams] *claimed that she did not become violent towards the manager; however, [Williams] did not appear in court to dispute it. As such, the denial shall be upheld.*

(Emphasis added.)

¶ 13. The circuit court reversed the Housing Authority's denial of rent assistance because it concluded that, under *Gehin v. Wisconsin Group Insurance Board,* 2005 WI 16, 278 Wis. 2d 111, 692 N.W.2d 572, the Housing Authority could not base its decision solely on uncorroborated hearsay evidence (the officer's written notes recalling the witness's statement of what Williams said), and therefore, the Housing Authority lacked sufficient evidence on which to base its denial. We agree.

¶ 14. Uncorroborated hearsay evidence, even if admissible, does not by itself constitute substantial evidence. *Id.,* 278 Wis. 2d 111, ¶ 8 (citing *Folding Furniture Works, Inc. v. Wisconsin LRB,* 232 Wis. 170, 189, 285 N.W. 851 (1939)). Adherence to this rule is premised on hearsay's innate lack of reliability. *See id.,* ¶ 58. "Substantial evidence has been defined . . . as 'that quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion.' " *Id.,* ¶ 48. Substantial evidence must include something "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.' " *Id.* (citations omitted).

¶ 15. Certainly, hearsay is *admissible* at informal Housing Authority hearings pursuant to 24 C.F.R. § 982.555(e)(5) (2009), just like it is admissible in state agency hearings pursuant to WIS. STAT. § 227.45(1).

187

However, "the relaxed evidentiary standard is not meant to allow the proceedings to degenerate to the point where an administrative agency relies only on unreliable evidence." *Gehin*, 278 Wis. 2d 111, ¶ 51. The courts are required to " 'set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence.' " *Id.* (citation omitted). "Properly admitted evidence may not necessarily constitute substantial evidence." *Id.*, ¶ 52.

¶ 16. Keeping these standards in mind, we examine the record to determine whether there was sufficient evidence to support the Housing Authority's decision. *See Harris*, 87 Wis. 2d at 651–52. There were only two pieces of evidence in the record to support the Housing Authority's decision to deny Williams's application because she engaged in "[v]iolent criminal activity" or "[o]ther criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents": (1) the municipal citations, and (2) the hearsay statement on the back of the disorderly conduct citation. *See* 24 C.F.R. § 982.553(a)(2)(ii). No witness to the September 2004 incident testified at the hearing, other than Williams.

¶ 17. The Housing Authority concedes that its decision is not based on the first of those pieces of evidence—namely, the adjudications of guilt—but contends instead, that its decision is based on the "conduct described in the police citation." As previously noted, the "conduct described in the police citation" consists of the responding police officer's written notes recalling his conversation with the witness when he arrived at the restaurant the day of the incident. The parties do not dispute that the evidence is double-hearsay—the officer's statements of what the witness told him Williams said.

188

¶ 18. The only other evidence presented at the hearing regarding the September 2004 incident was Williams's own testimony. In its written decision, the Housing Authority conceded that Williams denied being violent, but disregarded Williams's denial because Williams had not appeared in municipal court to dispute the ticket. More specifically, the decision stated that "[Williams] claimed that she did not become violent toward the manager; however, [Williams] did not appear in court to dispute it. As such, the denial [of the rent assistance application] shall be upheld."

¶ 19. The Housing Authority's findings violate the long-standing Wisconsin rule against basing an agency finding on uncorroborated hearsay. *See Gehin*, 278 Wis. 2d 111, ¶ 8. Here, the Housing Authority clearly founded its decision on double-hearsay—the officer's written statement on the back of the September 2004 citation. No witness testified to verify that recollection of events; Williams testified and denied the threat and the violence. While the Housing Authority's decision implicitly states that it did not find Williams credible, the responding officer's recollection of what a witness told him Williams said on September 2004, by itself, is not sufficient evidence on which the Housing Authority can deny Williams's application. Based on *Gehin* and basic fairness, the Housing Authority's findings and decision cannot stand.

 

¶ 20. Whether the Housing Authority proceeded on a correct theory of law, when it concluded that the default judgment entered on the municipal citations amounted to an admission by Williams, is a question we review *de novo. See Kraus*, 261 Wis. 2d 485, ¶ 10. To the extent that the Housing Authority may have made

such a finding, we find it to be in error. When Williams failed to appear in municipal court on the second scheduled court date, the court entered a no contest plea on her behalf. As a matter of law, a no contest plea, whether to a civil or a criminal charge, is not an admission. *Robinson v. City of West Allis*, 2000 WI 126, ¶ 44, 239 Wis. 2d 595, 619 N.W.2d 692. After entering the no contest plea on Williams's behalf, the municipal court entered a default judgment against her on the disorderly conduct, and assault and battery citations. Williams was not there and made no statement about the facts underlying the citations. The Housing Authority's conclusion—that the guilty finding on the municipal citations and Williams's failure to challenge that finding was an admission of the underlying facts—is erroneous as a matter of law.

¶ 21. The Housing Authority argues, unconvincingly, that *Gehin* does not apply because it stands for the proposition that only *controverted* hearsay is insufficient to constitute substantial evidence, and here, the hearsay is *uncontroverted*. Indeed, *Gehin* does seem to limit its holding to controverted evidence; however, the Housing Authority's assertion that "Williams did not dispute that she made such threats" is belied by the record. In her testimony before the Housing Authority, Williams explicitly denied slapping, hitting, or pushing Koceja, stating "I did not slap her. I did not hit her. I didn't push her out of my way." To the extent she did not explicitly deny threatening Koceja, she certainly implied that she did not threaten her when she omitted those facts from her step-by-step description of the incident. Further, when recalling her reactions to receiving the citations in the mail (she had left the restaurant by the time the police arrived) Williams testified that her first thoughts were: "I'm innocent[;]

190

I'm going to dispute these charges." Through this testimony, Williams controverted the double-hearsay report that she threatened Koceja or engaged in violence against her. Therefore, *Gehin* applies.

¶ 22. Next, the Housing Authority argues, without citing to any specific statement in *Gehin* or any other authority, that *Gehin* only applies to Wis. Stat. ch. 227 state agency cases. Because the Housing Authority is not a state agency governed by ch. 227, but rather is governed by federal and local regulations and is charged with administering rent assistance pursuant to Section 8 of the United States Housing Act of 1937, the Housing Authority asserts that *Gehin* does not apply. The Housing Authority fails to adequately develop and support this argument. Further, as counsel for Williams noted in her brief, *Gehin* is actually not a ch. 227 case, but instead addresses certiorari review of a decision of the Wisconsin Group Insurance Board pursuant to Wis. Stat. § 40.08(12) (2001–02), *see Gehin*, 278 Wis. 2d 111, ¶ 5; therefore, to the extent this is a case addressing certiorari review, *Gehin* applies. More importantly, as the court in *Gehin* stated, "[t]he sufficiency of the evidence on certiorari review" (the issue addressed by *Gehin*) "is identical to the substantial evidence test used for the review of administrative determinations under chapter 227 of the statutes." *Id.*, 278 Wis. 2d 111,¶ 6. Consequently, we conclude *Gehin* applies to certiorari reviews generally, regardless of whether *Gehin* itself addressed ch. 227 cases or certiorari review.

¶ 23. Next, the Housing Authority attempts to limit *Gehin*'s holding to written medical records only. While it is true that the facts in *Gehin* involved medical records, *Gehin* cites "the long-standing rule . . . that uncorroborated hearsay evidence alone does not constitute substantial evidence." *Id.*, 278 Wis. 2d 111, ¶ 8

(citing *Folding Furniture*, 232 Wis. at 189). The rule does not limit itself to medical evidence.

¶ 24. Finally, the Housing Authority cites *Richardson v. Perales*, 402 U.S. 389 (1971), for the proposition that the Housing Authority can deny rental assistance applications solely on the basis of hearsay. The Court held in *Perales* that, in the context of Social Security disability hearings, a physician's written report of his medical findings alone can constitute substantial evidence even when contradicted by testimony. *Id.* at 402. The Housing Authority acknowledges, in a footnote, that the Wisconsin statutes addressing small claims expressly reject the *Perales* rule. *See* WIS. STAT. § 799.209(2) (stating that "[a]n essential finding of fact may not be based solely on a declarant's oral hearsay statement unless it would be admissible under the rules of evidence"). But the Housing Authority argues that the legislature's failure to create a similar statute regarding local housing authorities indicates some sort of legislative acceptance of the *Perales* rule. The Housing Authority failed to raise this argument before the circuit court, and therefore, the argument is forfeited.[2]

---

[2] In its reply brief, the Housing Authority contends that Williams is mistaken in her assertion that the Housing Authority forfeited this argument because it "argued to the circuit court ... that it was permitted to render its decision based on hearsay evidence." After reviewing the entire transcript of the hearing before the circuit court (because the Housing Authority did not provide us with a pinpoint citation) and the Housing Authority's brief before the circuit court, we fail to see where this argument was raised. Instead, the Housing Authority argued before the circuit court that the evidence considered by the Housing Authority was not hearsay, and if it was hearsay that *Gehin* allows administrative bodies to "rely on hearsay where the evidence has sufficient probative force to support a reasonable conclusion." As best we can tell, the Housing Authority did not mention *Perales*

*See Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980).

*By the Court.*—Order affirmed.

before the circuit court or mention that the Housing Authority could render a decision founded on hearsay based on law other than *Gehin*, and if it did, it did not provide us with a citation to the record demonstrating that fact.