PER CURIAM.
¶ 1 Upon a recommendation from the City of Milwaukee Licenses Committee (Licenses Committee), the City of Milwaukee Common Council (Common Council) denied an application for a liquor license that had been submitted by Buena Vista Hall, LLC (Buena Vista). Buena Vista sought judicial review of the Common Council's decision, which the circuit court affirmed. On appeal, Buena Vista argues the circuit court erred by: (1) concluding Buena Vista was not entitled to a writ of mandamus; (2) denying Buena Vista's motion to expand the scope of review; and (3) affirming the Common Council's decision on certiorari review. We reject each of these arguments and affirm.
BACKGROUND
¶ 2 Buena Vista is a Wisconsin limited liability corporation. Elias Vidrio is its registered agent. In 2015, Buena Vista purchased a property located at 3000 South 13th Street in Milwaukee (the Property). Buena Vista asserts that, prior to its purchase, the Property had served as a "tavern and assembly hall" for over 100 years, and previous owners had successfully obtained "Class B-type" liquor licenses.[1] According to Buena Vista, the individual who owned the Property immediately before Buena Vista operated the premises "relatively trouble-free," but the individual who owned the Property before that time "had his license revoked due to poor operation, unruly customers, and criminal activities, including drug dealing."
¶ 3 Buena Vista contends that, after purchasing the Property, it performed extensive updates and repairs, the cost of which exceeded $100,000. In February 2016, Buena Vista submitted an application to the City of Milwaukee Board of Zoning Appeals to use the Property as an assembly hall. The Board approved that use, and Buena Vista applied for a Class B liquor license.
¶ 4 On September 6, 2016, the Licenses Committee held a public hearing regarding Buena Vista's liquor license application. The five-member committee was chaired by alderman Anthony Zielinski, who represents the aldermanic district where the Property is located.
¶ 5 During the September 6 hearing, three witnesses spoke in favor of Buena Vista's liquor license application: area business owners Alex Ferreira and William Horst; and Elias Vidrio's daughter, Jennifer Vidrio. Three witnesses also spoke against Buena Vista's application: Robert Montemayor, the owner of the Monterrey Market, a grocery store located next to the Property; and Monterrey Market employees Sergio Montalgo and Jorge Meraz. Montemayor opposed the application based on concerns about insufficient parking in the area. He also noted that, when the Property had previously been used as a tavern and assembly hall, its customers had damaged his store and left garbage in his parking lot. Montalgo-who also lived in the neighborhood-similarly voiced concerns about parking, street congestion, and past conduct of the Property's patrons. Meraz, who owned a rental property in the neighborhood, also opposed the application due to concerns about parking and patrons leaving garbage on his property.
¶ 6 Upon questioning by Buena Vista's attorney, Montemayor admitted that he had made a $200 donation to Zielinski's campaign in 2012 and that his wife had donated $250 to Zielinski's campaign in 2013. Buena Vista's attorney also asserted during the hearing that campaign finance reports showed Montemayor's wife and two of his employees had donated a total of $1388 to Zielinski's campaign since 2012.[2]
¶ 7 Buena Vista subsequently requested that Zielinski recuse himself from voting on whether to recommend that the Common Council approve Buena Vista's liquor license application. Zielinski declined to recuse himself. He instead moved to recommend the denial of Buena Vista's application, based on the concentration of liquor licenses in the neighborhood surrounding the Property and "neighborhood ... objections." Two members of the Licenses Committee abstained from voting. The three remaining members-including Zielinski-voted to recommend denial of Buena Vista's application. The Common Council later denied the application by a unanimous vote.[3] Zielinski was one of the fifteen Common Council members who voted to deny the application.
¶ 8 Buena Vista then filed a petition for judicial review of the Common Council's decision and for a writ of mandamus compelling the Common Council to issue it a liquor license. As relevant here, Buena Vista argued that Zielinski was biased against it, and the Licenses Committee's decision was therefore arbitrary, capricious, and contrary to law. Buena Vista also moved the circuit court to expand the scope of review in order to permit Buena Vista to "take testimony, depositions and written interrogatories" related to Zielinski's alleged bias.
¶ 9 Following briefing by the parties, the circuit court issued an order denying Buena Vista's petition for a writ of mandamus, denying Buena Vista's motion to expand the scope of review, and affirming the Common Council's decision to deny Buena Vista's liquor license application. As for the first issue, the court concluded a writ of mandamus was an "inappropriate" remedy "for a discretionary action like licensing," and, in any event, Buena Vista had failed to "satisfy the requirements for a writ of mandamus." With respect to the second issue, the court concluded Buena Vista was not entitled to expand the scope of review because it had failed to demonstrate a prima facie case of either actual bias or an impermissible risk of bias by Zielinski. Finally, applying certiorari review, the court determined there was no basis for it to overturn the Common Council's decision to deny Buena Vista's liquor license application. Buena Vista now appeals.
DISCUSSION
I. Writ of mandamus
¶ 10 Buena Vista contends the circuit court erred by denying its petition for a writ of mandamus. A writ of mandamus is an "extraordinary legal remedy," Lake Bluff Hous. Partners v. City of S. Milwaukee , 197 Wis. 2d 157, 170, 540 N.W.2d 189 (1995), that is used "to compel a public officer to perform a duty of his [or her] office presently due to be performed," State ex rel. Marberry v. Macht , 2003 WI 79, ¶ 27, 262 Wis. 2d 720, 665 N.W.2d 155. A party seeking a writ of mandamus must establish that: (1) the writ is based on a clear, specific legal right that is free from substantial doubt; (2) the duty sought to be enforced is positive and plain; (3) substantial damage will result if the duty is not performed; and (4) no other adequate remedy exists at law. Lake Bluff , 197 Wis. 2d at 170. We will uphold a circuit court's decision to grant or deny a writ of mandamus absent an erroneous exercise of discretion. Id.[4]
¶ 11 Here, Buena Vista asked the circuit court to issue a writ of mandamus compelling the Common Council to issue Buena Vista a liquor license. We conclude the court did not erroneously exercise its discretion by denying that request. Instead, the court correctly determined that Buena Vista had failed to demonstrate the existence of three of the requirements for issuance of the writ.
¶ 12 First, the circuit court correctly concluded that Buena Vista has no clear legal right to the issuance of a liquor license. Wisconsin courts have long held that a liquor license is a privilege, not a right. Moedern v. McGinnis , 70 Wis. 2d 1056, 1066, 236 N.W.2d 240 (1975). Whether a license should be issued to a particular applicant is a matter of local concern, State ex rel. Smith v. City of Oak Creek , 139 Wis. 2d 788, 801, 407 N.W.2d 901 (1987), and is within the discretion of the licensing authority, Rawn v. City of Superior , 242 Wis. 632, 636-37, 9 N.W.2d 87 (1943). In this case, the Common Council exercised its discretion not to issue Buena Vista a liquor license.
¶ 13 While not disputing that it has no clear legal right to a liquor license, Buena Vista argues it "does have a ... clear legal right to due process and a fair and impartial hearing." It contends that right was violated because Zielinski was biased against it. However, for the reasons explained below, we reject Buena Vista's argument that Zielinski was biased. See infra ¶¶ 20-30. In addition, even if we concluded the proceedings before the Licenses Committee violated Buena Vista's right to due process, the remedy would not be a writ of mandamus compelling the Common Council to issue Buena Vista a liquor license. Instead, Buena Vista would simply be entitled to a remand to the Licenses Committee for a new hearing that complied with due process. See Sliwinski v. Board of Fire & Police Comm'rs of Milwaukee , 2006 WI App 27, ¶ 16, 289 Wis. 2d 422, 711 N.W.2d 271 (holding that a remand for a new hearing was the appropriate remedy for a due process violation, rather than a court order compelling the reinstatement of the plaintiff's employment).
¶ 14 Next, the circuit court correctly concluded that Buena Vista failed to establish the second requirement for mandamus relief-the existence of a positive and plain duty to issue a liquor license. Again, whether to issue a liquor license rests within the discretion of the licensing authority. Rawn , 242 Wis. at 636-37. In this case, the Licenses Committee considered Buena Vista's liquor license application, provided Buena Vista with a hearing, and then exercised its discretion to recommend denial of Buena Vista's application. The Common Council subsequently exercised its own discretion to deny the application, based on the Licenses Committee's recommendation. The Licenses Committee and Common Council thus fulfilled their plain and positive duties with respect to Buena Vista's application.
¶ 15 Similar to its previous argument, Buena Vista contends that, although the Common Council may not have had a plain and positive duty to issue it a liquor license, the Licenses Committee had "a plain legal duty to comport with due process requirements, remain fair and impartial[,] and act according to law." This argument is again based on Buena Vista's assertion that Zielinski was biased. However, as already noted, we reject that argument below. See infra ¶¶ 20-30. Furthermore, as noted above, even if the proceedings before the Licenses Committee violated due process, the proper remedy would be a remand for a new hearing, not a writ of mandamus compelling the Common Council to issue Buena Vista a liquor license. Buena Vista also argues the Licenses Committee has a plain legal duty to "issue or deny licenses in a manner that is not arbitrary, oppressive, or unreasonable." This argument fails because, as explained below, we reject Buena Vista's argument that the decision to deny its liquor license application was arbitrary, oppressive, or unreasonable. See infra , ¶¶ 33-38.
¶ 16 Finally, the circuit court appropriately concluded that Buena Vista failed to establish the fourth requirement for mandamus relief-the lack of another adequate remedy at law. As the court correctly observed, if Buena Vista believed that either the Licenses Committee or the Common Council acted inappropriately with respect to its liquor license application, it had an adequate legal remedy to address that wrong-namely, certiorari review. See WIS. STAT. § 125.12(2)(d) (permitting judicial review of a municipality's decision to grant or deny a liquor license); Nowell v. City of Wausau , 2013 WI 88, ¶ 3, 351 Wis. 2d 1, 838 N.W.2d 852 (holding that certiorari is the correct standard of review under § 125.12(2)(d) ). Buena Vista does not address the court's conclusion that it was not entitled to mandamus relief due to the availability of certiorari review, and it thereby concedes that point. See Schlieper v. DNR , 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).
¶ 17 For the reasons set forth above, we conclude the circuit court properly determined that Buena Vista failed to establish three of the four requirements for mandamus relief. As such, the court did not erroneously exercise its discretion by denying Buena Vista's petition for a writ of mandamus.
II. Motion to expand the scope of review
¶ 18 The circuit court also denied Buena Vista's motion to expand the scope of review in order to permit Buena Vista to conduct additional discovery regarding Zielinski's alleged bias. The "general rule" on certiorari review is that the circuit court "does not take evidence on the merits of the case and the scope of review is limited to the record presented to the tribunal whose decision is under review." Sills v. Walworth Cty. Land Mgmt. Comm. , 2002 WI App 111, ¶ 36, 254 Wis. 2d 538, 648 N.W.2d 878. However, in cases involving alleged bias by a municipal decision maker, "the public policy of promoting confidence in impartial tribunals may justify expansion of the certiorari record where evidence outside of that record demonstrates procedural unfairness." Id. , ¶ 42.
¶ 19 Nonetheless, before a circuit court may authorize such expansion, the party seeking to expand the scope of review must make a prima facie showing of bias. Id. This can be done by making a prima facie showing either that the decision maker was biased in fact or that its conduct demonstrated an impermissible risk of bias. See id. , ¶ 43 (citing Marris v. City of Cedarburg , 176 Wis. 2d 14, 25, 498 N.W.2d 842 (1993) ). When evaluating whether a party has made this showing, we must keep in mind that the decision maker is entitled to a presumption of honesty and integrity. See id.
¶ 20 Buena Vista argues six factors in this case demonstrate a prima facie showing of bias by Zielinski: (1) Zielinski's receipt of campaign donations from Montemayor, his wife, and his employees; (2) Montemayor's concession during the Licenses Committee hearing that he had made efforts to purchase the Property before Buena Vista purchased it; (3) the fact that the only witnesses who testified against Buena Vista's application were Montemayor and his employees; (4) an email from Zielinski to the Board of Zoning Appeals, which Buena Vista contends "indicat[ed] [Zielinski's] prejudgment of the matter"; (5) the Licenses Committee's failure to credit evidence showing that Buena Vista had addressed concerns regarding parking; and (6) the Licenses Committee's failure to credit evidence that Buena Vista had addressed concerns regarding security. We do not agree that these factors-either individually or cumulatively-are sufficient to make a prima facie showing of bias.[5]
¶ 21 With respect to the campaign contributions, it is apparently undisputed that Montemayor made a $200 donation to Zielinski's campaign in September 2012, that Montemayor's wife made a $250 donation to his campaign sometime during 2013, and that Montemayor's wife and two of his employees donated a total of $1388 between 2012 and September 2016.[6] We agree with the circuit court that these relatively small amounts-donated as many as four years before the hearing in question-are insufficient to demonstrate a prima facie showing of bias by Zielinski. Cf. DeBaker v. Shah , 194 Wis. 2d 104, 117-18, 533 N.W.2d 464 (1995) (concluding an arbitrator was not "evidently partial" based on his receipt of $1475 in campaign contributions from members of a law firm representing one of the parties in an arbitration). This conclusion is particularly true given the presumption of honesty and integrity to which Zielinski is entitled. See Sills , 254 Wis. 2d 538, ¶ 43.
¶ 22 Buena Vista also relies on Montemayor's concession during the Licenses Committee hearing that he had previously made efforts to purchase the Property. In addition, Buena Vista emphasizes that the only witnesses to testify against its liquor license application were Montemayor and two of his employees. We fail to see how these factors demonstrate a prima facie showing of bias by Zielinski. The information Buena Vista cites was before the Licenses Committee. Although it could have provided a basis for the Licenses Committee to infer that Montemayor and his employees were not credible witnesses, the Licenses Committee clearly chose not to draw that inference. Credibility determinations are within the province of the Licenses Committee, not this court. See State ex rel. Ortega v. McCaughtry , 221 Wis. 2d 376, 391, 585 N.W.2d 640 (Ct. App. 1998). Buena Vista does not cite any evidence indicating that the Licenses Committee refused to consider the information cited above, or that Zielinski improperly influenced the Licenses Committee's decision to rely on the testimony of Montemayor and his employees. On these facts, we cannot conclude that the factors Buena Vista cites provide evidence of bias on Zielinski's part.
¶ 23 Buena Vista next cites an email Zielinski allegedly sent to the Board of Zoning Appeals, which, according to Buena Vista, shows that Zielinski prejudged Buena Vista's liquor license application. We reject this argument because-as the circuit court correctly noted-the email in question is not in the record.[7] We therefore cannot rely on the email when assessing Zielinski's alleged bias. See Jenkins v. Sabourin , 104 Wis. 2d 309, 313-14, 311 N.W.2d 600 (1981).
¶ 24 Finally, Buena Vista argues it submitted evidence at the hearing that should have alleviated the Licenses Committee's concerns regarding parking and security. Specifically, Buena Vista asserts there was evidence at the hearing that it had arranged to rent parking spaces in a lot owned by a nearby business, and that it had retained a private security firm to address any concerns regarding the conduct of its patrons. The presence of this evidence does not support a prima facie showing of bias. The Licenses Committee is charged with weighing the evidence before it, see Ortega , 221 Wis. 2d at 391, and it was not required to accept Buena Vista's contention that the measures it had taken would adequately address the parking and security issues testified to by Montemayor and his employees. Again, Buena Vista does not cite any evidence suggesting that Zielinski improperly influenced the other committee members in their consideration of Buena Vista's evidence. Under these circumstances, the fact that the Licenses Committee did not find Buena Vista's evidence persuasive does not support a conclusion that Zielinski-or any other member of the Licenses Committee-was biased. Moreover, Buena Vista fails to cite any evidence indicating that Zielinski improperly influenced the Common Council's ultimate decision to deny Buena Vista's application.[8]
¶ 25 In support of its assertion that it made a prima facie showing of bias, Buena Vista relies heavily on two cases: Marris , 176 Wis. 2d 14, and Keen v. Dane County Board of Supervisors , 2004 WI App 26, 269 Wis. 2d 488, 676 N.W.2d 154 (2003). However, both are distinguishable.
¶ 26 In Marris , a zoning board concluded a landowner's property had lost its legal nonconforming use status. Marris , 176 Wis. 2d at 23. Before the board reached that decision, its chairperson made statements indicating that the landowner's legal position was a " 'loophole' in need of 'closing' " and that the board members and assistant city attorney should try to "get her [the landowner] on the Leona Helmsley rule." Id. at 27. On appeal, the landowner argued these statements showed that the board chairperson had prejudged the matter, thus creating an impermissibly high risk of bias. See id. at 19.
¶ 27 In addressing the landowner's argument, we observed that "a board member's opinions on land use and preferences regarding land development should not necessarily disqualify the member from hearing a zoning matter" because such decision makers are "selected from the local area" and "can be expected to have opinions about local zoning issues." Id. at 26. However, we held that a "clear statement 'suggesting that a decision has already been reached, or prejudged, should suffice to invalidate a decision.' " Id. (citation omitted). We concluded such circumstances were present in Marris , based largely on the chairperson's statement that local authorities should try to "get" the landowner. See id. at 29-31. We concluded that statement-considered together with the chairperson's "loophole" statement-revealed an impermissibly high risk of bias because "[i]mpartial decision-makers do not 'get' the parties before them." See id. at 31. Here, in contrast, Buena Vista does not cite any statements by Zielinski expressing the type of animus evidenced by the board chairperson in Marris or indicating that Zielinski had prejudged Buena Vista's liquor license application.
¶ 28 Keen involved a challenge to a conditional use permit allowing P & D to operate a gravel pit. See Keen , 269 Wis. 2d 488, ¶ 2. On appeal, individuals opposed to the gravel pit alleged that members of the county zoning committee were biased in favor of P & D. Id. As evidence of bias, they noted that one of the committee members had previously co-signed a letter vouching for the quality of P & D's work, which P & D had then included in its permit application. Id. In the letter, the committee member stated P & D had "always stood out above the rest in [its] efforts and success in being a good corporate citizen and caretaker of the land," and his "close and personal view" confirmed P & D's good track record and recommended it as a good business to operate a gravel pit in the community. Id. , ¶ 15.
¶ 29 We concluded these statements demonstrated an impermissibly high risk of bias because, when P & D submitted the committee member's letter as part of its permit application, the committee member "became an advocate for P & D." Id. We reasoned the committee member could not "be both an advocate and an impartial decisionmaker on this issue." Id. We stated his advocacy "surpasse[d] merely forming an opinion about a subject" and was therefore sufficient to "overcome[ ] the presumption of integrity and honesty." Id. Conversely, in this case, the record contains no evidence demonstrating that Zielinski made statements advocating against Buena Vista's liquor license application. While Buena Vista cites Zielinski's email to the Board of Zoning Appeals, as explained above, that email is not in the record, and we therefore cannot consider it.
¶ 30 Ultimately, we agree with the circuit court's assessment of the circumstances presented by this case:
Several residents affiliated with a local grocery store made modest contributions to a local politician over several years. They testified in front of him at a heated hearing in which they opposed a liquor license, and the application was denied. That description may insinuate favoritism, but it does not suggest that a decision ha[d] already been made, nor does it overcome the presumption of honest adjudicators.
Under these circumstances, we agree with the court that Buena Vista failed to make a prima facie showing of either actual bias by Zielinski or an impermissible risk of bias. We therefore conclude the court properly denied Buena Vista's motion to expand the scope of review.
III. Certiorari review of the Common Council's decision
¶ 31 Buena Vista also argues the circuit court erred by upholding the Common Council's decision to deny its liquor license application on certiorari review.[9] "The scope of our review on certiorari is identical to the circuit court, and we therefore conduct our review of the [municipality's] decision independent of the circuit court's conclusions." Steenberg v. Town of Oakfield , 167 Wis. 2d 566, 571, 482 N.W.2d 326 (1992). We accord a presumption of correctness and validity to the municipality's decision, and our review is limited to determining: (1) whether the municipality kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the municipality might reasonably make the order or determination in question. Nowell , 351 Wis. 2d 1, ¶ 24. Here, Buena Vista's arguments focus on the second, third, and fourth prongs of certiorari review.
¶ 32 First, Buena Vista correctly observes that, in order to act according to law, a decision maker must comport with the common law concepts of due process and fair play. Marris , 176 Wis. 2d at 24. Those concepts include the right to an impartial decision maker. Id. Buena Vista therefore argues that, because Zielinski was biased, the Licenses Committee did not act according to law when it recommended denial of Buena Vista's liquor license application. However, we have already determined that Buena Vista has failed to establish even a prima facie showing of bias on Zielinski's part. We therefore reject its argument that the Licenses Committee did not act according to law.
¶ 33 Buena Vista next argues that the Licenses Committee's decision was arbitrary, oppressive, and unreasonable. Buena Vista initially asserts, once again, that Zielinski was biased. We reject that argument for the reasons explained above.
¶ 34 Buena Vista also argues the Licenses Committee's decision was arbitrary because, in essence, the evidence that supported granting Buena Vista's application outweighed the evidence in support of denying it. While framed as an argument regarding the arbitrariness of the Licenses Committee's decision, this argument actually appears to fall under the fourth prong of certiorari review-whether the evidence was such that the municipality might reasonably make the order or determination in question. Nowell , 351 Wis. 2d 1, ¶ 24.
¶ 35 We apply the substantial evidence test to determine whether the evidence is sufficient to support the Licenses Committee's decision. See Clark v. Waupaca Cty. Bd. of Adjustment , 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994). Under that test, we must uphold the Licenses Committee's decision if it is supported by substantial evidence, even if there is also substantial evidence to support the opposite decision. See Sills , 254 Wis. 2d 538, ¶ 11. "Substantial evidence is evidence of such convincing power that reasonable persons could reach the same decision as the [Licenses Committee]." Clark , 186 Wis. 2d at 304. It is less than a preponderance of the evidence, but more than a "mere scintilla" of evidence. Oneida Seven Generations Corp. v. City of Green Bay , 2015 WI 50, ¶ 44, 362 Wis. 2d 290, 865 N.W.2d 162. When applying the substantial evidence test, we "do[ ] not pass on questions of credibility, nor [do we] weigh the evidence. The test is whether the evidence reasonably supports the decision." Williams v. Housing Auth. of Milwaukee , 2010 WI App 14, ¶10, 323 Wis. 2d 179, 779 N.W.2d 185 (2009).
¶ 36 In this case, the record amply supports the Licenses Committee's decision to recommend denial of Buena Vista's liquor license application. When considering a liquor license application, the Licenses Committee has discretion to consider a number of factors, including "factors which reasonably relate to the public health, safety and welfare." MILWAUKEE , WIS., CODE § 90-5-9-c-1-e (Dec. 13, 2016). At the hearing in this case, three witnesses testified that when the Property was previously operated as a tavern and assembly hall, there were frequent problems regarding parking, littering, property damage, and disruptive behavior by the tavern's patrons. That testimony was related to public safety and welfare and provided a sufficient basis for the Licenses Committee to recommend denial of Buena Vista's application.
¶ 37 Buena Vista emphasizes that the only witnesses to testify against its application were Montemayor-who conceded he had previously tried to buy the Property-and two of his employees. Buena Vista apparently intends to argue that, under these circumstances, the Licenses Committee should not have credited the testimony of Montemayor and his employees. However, as noted above, the Licenses Committee is charged with determining the credibility of the witnesses before it, see Ortega , 221 Wis. 2d at 391, and this court "does not pass on questions of credibility," Williams , 323 Wis. 2d 179, ¶ 10. We therefore decline Buena Vista's invitation to overturn the Licenses Committee's implicit finding that Montemayor and his employees were credible witnesses, despite the issues Buena Vista has raised regarding them.
¶ 38 Buena Vista also asserts the record shows that it addressed the concerns Montemayor and his employees raised regarding parking and security by renting parking spaces from a nearby business and hiring a private security firm. This argument fails because, as noted above, the Licenses Committee is responsible for weighing the evidence before it. See Ortega , 221 Wis. 2d at 391. As such, the Licenses Committee was not required to accept Buena Vista's contention that the measures it had taken would adequately address the parking and security issues testified to by Montemayor and his employees. Considering the totality of the evidence in the record, see Oneida Seven Generations , 362 Wis. 2d 290, ¶ 45, a reasonable person could reach the same decision as the Licenses Committee, see Clark , 186 Wis. 2d at 304.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Generally speaking, a Class B liquor license "authorizes the retail sale of intoxicating liquor for consumption on the premises where sold by the glass and not in the original package or container." Wis. Stat. § 125.51(3)(a) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Counsel stated he would submit copies of the campaign finance reports "into the record." The appellate record, however, does not contain any such documents.

The Common Council also denied Buena Vista's application for a public entertainment premises license. However, Buena Vista did not seek judicial review of that denial, nor does it raise any argument regarding the public entertainment premises license on appeal. We therefore do not further address the Common Council's decision to deny Buena Vista's application for a public entertainment premises license.

Buena Vista repeatedly asserts that the circuit court "abused" its discretion. Our supreme court changed the terminology used when reviewing circuit courts' discretionary decisions from "abuse of discretion" to "erroneous exercise of discretion" in 1992. See State v. Plymesser , 172 Wis. 2d 583, 585 n.1, 493 N.W.2d 367 (1992).

Buena Vista argues the circuit court "abuse[d]" its discretion by refusing to expand the scope of review. The Licenses Committee and the City of Milwaukee do not discuss the applicable standard of review for this issue. In Sills v. Walworth County Land Management Committee , 2002 WI App 111, 254 Wis. 2d 538, 648 N.W.2d 878, we did not expressly address the standard of review that applies to a circuit court's decision to expand the scope of review, but we ultimately determined "as a matter of law" that the appellants had failed to make a prima facie showing of bias. Here, regardless of the standard of review governing the circuit court's decision not to expand the scope of review, we conclude Buena Vista failed to make a prima facie showing of bias. The circuit court therefore properly denied Buena Vista's request to expand the scope of review.

The campaign finance reports that Buena Vista's attorney referenced during the Licenses Committee hearing are not in the record. Nonetheless, Montemayor testified regarding the $200 and $250 contributions, and the $1388 figure does not appear to be disputed on appeal.

Buena Vista contends the record does, in fact, contain Zielinski's email. However, the only record citation Buena Vista provides in support of that assertion is to its attorney's closing argument before the Licenses Committee. Attorneys' arguments are not evidence. Horak v. Building Servs. Indus. Sales Co. , 2012 WI App 54, ¶ 3 n.2, 341 Wis. 2d 403, 815 N.W.2d 400.

In addition to the factors discussed above, Buena Vista also insinuates in its statement of facts that Zielinski's bias against it was racially motivated. However, Buena Vista provides no evidence or any developed legal argument to support a claim of racial bias. We agree with the Licenses Committee and the City of Milwaukee that "simply making incendiary allegations of racial bias without evidence should not be enough to warrant overturning a municipal decision."

Buena Vista's arguments on appeal pertain to the Licenses Committee's decision to recommend denial of its liquor license application. However, it is the Common Council's decision, not the underlying decision of the Licenses Committee, from which Buena Vista could petition for judicial review. See Wis. Stat. § 125.15(2)(d) (permitting circuit court review of "[t]he action of any municipal governing body in ... failing to grant ... any license for good cause"). Nevertheless, this distinction is ultimately immaterial for purposes of this appeal, as the Common Council's unanimous decision to deny Buena Vista's application was based on the Licenses Committee's recommendation, and Buena Vista develops no separate argument regarding error within the Common Council's proceedings.