Steve Ottman and Sue Ottman,
Plaintiffs-Appellants-Petitioners,†

v.

Town of Primrose, Defendant-Respondent.

Supreme Court

*No. 2008AP3182.—Decided March 22, 2011.*

2011 WI 18

(Also reported in 796 N.W.2d 411.)

† Motion for reconsideration denied 5/26/11.

5

For the plaintiffs-appellants-petitioners there were briefs and oral argument by *John D. Varda* and *DeWitt Ross and Stevens, SC,* Madison.

For the defendant-respondent there was a brief and oral argument by *Glenn Reynolds* and *Reynolds and Associates,* Madison.

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Steve and Sue Ottman, seek review of an unpublished decision of the court of appeals that affirmed a circuit court order dismissing their petition for certiorari review of a decision of the Town of Primrose Board of

Supervisors. The Board denied the Ottmans' application for a permit to build a residential driveway.[1]

¶ 2. The Ottmans contend that our standards for certiorari review should be changed in two respects. First, they argue that we should overrule cases imposing limitations on the scope of statutory certiorari. Second, they argue that we should reexamine the presumption of correctness and deference afforded to a municipality's decision. The Ottmans assert that the Board interpreted the farm income requirement contained in the Town of Primrose Driveway Ordinance in a way that is contrary to the plain language of the Ordinance.

¶ 3. Because the Ottmans have failed to provide a persuasive rationale for upsetting our longstanding jurisprudence, we decline to alter the established scope of statutory certiorari. We further decline to graft the framework for reviewing administrative agency determinations onto our framework for reviewing municipal decisions. In situations where the language of a municipality's ordinance appears to be unique and does not parrot a state statute but rather was drafted by the municipality in an effort to address a local concern, we will defer to the municipality's interpretation if it is reasonable.

¶ 4. Under the circumstances presented here, we conclude that the Board's interpretation of the farm income requirement is entitled to a presumption of correctness, and we will accord it deference. The Ottmans have not met their burden of showing that the Board's interpretation is unreasonable. Applying its

---

[1] *See Ottman v. Town of Primrose,* No. 2008AP3182, unpublished slip op. (Wis. Ct. App., Feb. 18, 2010), affirming an order of the circuit court for Dane County, Maryann Sumi, J.

8

interpretation, the Board made a finding of fact that the farm income requirement was not met, and the Ottmans have failed to demonstrate that no reasonable view of the evidence supports that finding. Therefore, we conclude that the Ottmans have not overcome the presumption of correctness. Accordingly, we affirm the court of appeals.

I

¶ 5. The Town of Primrose operates under a Land Use Plan that was prepared for the Town by staff to the Dane County Regional Planning Commission.[2] In recognition that "unplanned development, particularly on a large scale, can occur in such a way that . . . problems with agricultural uses may occur," the Land Use Plan establishes "guidelines upon which development decisions can be based."

¶ 6. It provides that the Town's policy is "[t]o actively use and improve land use control measures which will discourage and prevent non-farm development in agricultural preservation areas." Section II.A of the Land Use Plan establishes the following objectives:

1. To preserve productive farmlands for continued agricultural use.

2. To discourage land uses which conflict with agriculture.

3. To maintain agriculture as the major economic activity and way of life within the Town.

---

[2] The parties agree that the Town's Land Use Plan was significantly revised in 2010. Throughout this opinion, references to the Land Use Plan are to the version of the plan that was in effect on September 3, 2004, the day the Ottmans filed the permit application that is the subject of this review.

4. To protect farm operations from incompatible land uses and activities which may adversely affect the capital investment in agricultural land, improvements and equipment.

¶ 7. In 2001, Steve and Sue Ottman became interested in purchasing a 47.7–acre parcel located in the Town of Primrose that had been zoned A-1 Exclusive Agricultural under Dane County zoning ordinances. Prior to purchasing the property, they asked the Town of Primrose Board of Supervisors to approve their request to build a field road. The Ottmans expressed their intention to develop the parcel into a Christmas tree farm, and they explained that they would need to have access to their trees and to the agricultural accessory building they planned to build on the property.

¶ 8. After extensive discussion at the August 21, 2001 Board meeting, the Board passed a resolution granting the Ottmans an access off Primrose Center Road to enhance agricultural use of the property.[3] Throughout the meeting, the supervisors expressed concern that approval of a field road might later be misinterpreted as approval for a residential driveway. One supervisor explained:

> I'm trying to steer away from anything that gets to be interpreted later as a driveway. You understand where

---

[3] The minutes from the meeting reflect: "Steve Ottman, possible purchaser of Meyers/Sarko property on Primrose Center Road to obtain permission for a field road to allow him to plant Christmas trees. After a lengthy discussion, permission was granted to Ottman for access to the property off of the township road. It was stated that in no way would a driveway permit be issued on this property because of safety issues. Motion by Rassner, seconded by Judd to adopt a resolution to allow access off town road on the Meyers/Sarko property to pursue agricultural activities. Motion carried."

10

I'm coming from? But at the same time, we don't want to limit your ability to put Christmas trees in there and derive profit from doing that.

The same supervisor explained: "[Y]ou could come back here in several years and, maybe I'll be here, maybe I won't, and [you could] say, I want a driveway permit now, and [you] could get turned down."

¶ 9. The Ottmans purchased the property. They erected an agricultural accessory building at the top of the hill and put in a 500–foot gravel field road linking that building to Primrose Center Road, which bordered the parcel. Over the course of the next several years, the Ottmans planted trees on 18 acres, and they also rented 29 acres to Al Hanna, a neighbor who grew field corn.

¶ 10. On September 3, 2004, the Ottmans filed a document entitled "Preliminary Application for Driveway Permit and Approval of Site Plan for Primary Farm Residence."[4] The application asserted that "[u]pon establishment, estimated annual income of Applicants' farm will exceed $30,000 annually" and that the proposed residence would be "for farm owner/operator who will derive substantial income from the farm operation."

¶ 11. The Ottmans' application contended that their Christmas tree farm could not be viable without a residence.[5] It asserted that the Ottmans wanted to

---

[4] Under Primrose Ordinances, one must receive a driveway permit and then construct the driveway before one can receive approval of a building site plan. Town of Primrose Driveway Ordinance 1.05(9) Building Permits ("No Building Permit for new residential construction will be issued until the driveway is constructed according to the specifications of this Ordinance.").

[5] The Ottmans' application contended: "Applicants not being able to reside on the Subject Farm has created hardship in

place the residence at the top of the hill because the soil was rockier and less productive. It identified a proposed site for the residence approximately 200 feet north of the existing agricultural accessory building.

¶ 12. The application was presented to the Town of Primrose Planning Commission on March 7, 2005. The Commission voted to recommend that the Board of Supervisors deny the application.

¶ 13. The following week, the application was presented at a meeting of the Board. During the meeting, supervisors expressed concern about the viability of the farm as a Christmas tree operation. They also expressed concern about whether the Ottmans' application met some of the requirements in the Town of Primrose Driveway Ordinance, including the farm income requirement contained in the Driveway Ordinance's "Agricultural Productivity" Clause.

¶ 14. The Agricultural Productivity Clause provides as follows:

> No driveway shall be approved in the Town of Primrose if the Town Board finds that the driveway will adversely impact productive agricultural land, unless the Town Board finds that the driveway is necessary to enhance the agricultural productivity of an adjacent parcel or the person requesting the permit can show that the parcel to be served by the driveway is capable of producing at least $6000.00 of gross income per year. Under any circumstance, the Town Board shall approve a driveway with the least impact on agricultural land.

the maintenance of the Christmas tree crop they have been planting, because these Christmas trees require timely weed control and the need for irrigation. The type of tree planted on the Subject Farm . . . requires the tree farmer to reside on site in order to provide maintenance and security."

Town of Primrose Driveway Ordinance 1.10.[6] One supervisor explained that the Board's historical interpretation of the farm income requirement was to require proof of actual income, not speculative income.[7]

¶ 15. Ultimately, the Board voted unanimously to deny the application. All three supervisors indicated that, among other reasons, they denied the application based on the Ottmans' failure to meet the Agricultural Productivity Clause's farm income requirement.[8] Shortly thereafter, the Ottmans filed a certiorari action in Dane County Circuit Court.

¶ 16. At a pretrial scheduling conference that took place while the action was pending in the circuit court, the parties agreed to send the matter back to the

---

[6] The Town of Primrose Building Site Permit contains a nearly identical clause. Because receipt of a driveway permit was necessary before the Board would consider an application for a building site permit, we focus our examination exclusively on the Agricultural Productivity Clause contained in the Driveway Ordinance.

[7] The supervisor elaborated: "[The Ottmans have] to have income. Keith is a good example. You had to prove your income didn't you Keith? In order to get your house? You've been farming for years. That's the way he got it. You didn't say—come and say well I can make it down the road or something. He had to show what income he had the last year from that crop. And that's what we're asking. That's what we've been asking all the time."

[8] The minutes reflect: "Discussion with Steve/Sue Ottman regarding a building site on their property Primrose Center Road. Questions on farm income were raised. . . . Rassner not sure that enough income can be derived from this farm and also that no builds are allowed on ag land unless it is a retirement home. The Ottmans[] felt that they could prove they can make enough money to show this as farm income. A ballot vote was taken with 3 for denial and 0 for approval."

13

Town of Primrose for review under Wis. Stat. Ch. 68.[9] The purpose of Chapter 68 is "to afford a constitutionally sufficient, fair and orderly administrative procedure and review" of municipal determinations that involve constitutionally protected rights. Wis. Stat. § 68.001. Based on the parties' stipulation, the circuit court remanded the matter to the Town Board for Chapter 68 review.[10]

¶ 17. On remand, the parties appear to have had difficulty deciding upon the procedures that should be used in conducting a review under Chapter 68. Ultimately, the parties reached a joint recommendation on procedures. They agreed upon a site visit and a special hearing in front of the Town Board.[11]

¶ 18. The special hearing was held on July 26, 2006. During the hearing, both sides presented exhibits, called witnesses, and presented direct examination and cross examination testimony.

---

[9] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[10] There is no transcript of the March 22, 2006 pretrial scheduling conference. However, the clerk's minutes reflect: "Atty Reynolds—tentative agreement to remand for Chpt. 68 review. . . . Atty Varda—straight remand."

[11] The parties' attorneys agreed that the Ottmans would provide their expert witnesses' written reports and both parties would identify their witnesses and summarize their expected testimony in advance; that witnesses would not be sworn; that the hearing would be recorded on the Town's tape recorder; that the Ottmans could hire a court reporter at their own expense; that the Ottmans would have an opportunity to present a reply after all evidence had been submitted; and that the Town would be permitted to inspect the property again after the hearing.

When the parties presented their joint recommendation, one supervisor asked the Ottmans' attorney whether the agreed-upon procedures would satisfy the requirements of Chapter 68. Attor-

¶ 19. Although the Board voted unanimously to deny the application and issued a proposed written decision at the January 16, 2007 meeting, it took several months, meetings, and redrafts before the decision was finalized. The Ottmans' attorney made a number of objections to the draft decision and asked the Board to reconsider or clarify several of its findings of fact and conclusions of law. The Board's written decision was ultimately signed on September 18, 2007.

¶ 20. In its written decision, the Board made a finding of fact that "[a]ll 47 acres of the Ottman farm are productive agricultural lands[.]" It provided two independent reasons for denying the application. The first reason was based on the Agricultural Productivity Clause's farm income requirement, and the second reason was based on the proposed site for the house.

¶ 21. The Board concluded that because the Ottmans "[c]urrently . . . receive no agricultural income from the sale of trees from the property," they "therefore do not currently meet the farm income standards" of

ney Varda responded: "At least for this case. You know you may want to consider whether this type of procedure is what you want permanently."

Later, however, Attorney Varda stated: "[W]hile we agreed to the procedure and we hope this goes well and quickly, we have not waived any of our potential objections to the process. Particularly in regard to Section 68.11(2), in regard to an impartial decision maker. Our view is, we'll—you'll proceed under the rules and see where we end up."

Although the Ottmans challenged the partiality of the proceedings in the circuit court, they subsequently abandoned that challenge. In their reply brief, they explained that they "elected not to seek review of such claims in order to focus on the deference issue and the need for more conscientious judicial scrutiny of such decisions."

the Town of Primrose Driveway Ordinance.[12] Due to the lack of farm income, the Board determined that "a residence constructed at this time would by definition be a 'non-farm' residence." It concluded that "[a] driveway built to service a non-farm residence in the location requested would violate Primrose's Land Use Plan which states that 'no roads or driveways shall be permitted to cross agricultural land to reach proposed non-farm development.' "

¶ 22. The Board also determined that "[e]ven if the Ottmans currently met the Town and County farm income requirements, they would not obtain approval of the farm house site they have requested[.]"[13] It stated that "[t]he proposed site and driveway do not meet the 'least impact' requirements of the Ordinances or have the least impact among all the options available on the farm due to the fact that building a residence at the top of the hill will require a longer driveway that will

---

[12] For the same reason, the decision also concluded that the application failed to meet the requirements of the Town of Primrose Building Permit Ordinance and County income requirements.

[13] In its decision, the Board found as a fact that "[t]he Town Board approved the construction of an agricultural building and a field road for access from Primrose Center Road . . . with the recommendation that the agricultural accessory building be constructed close to the road to minimize adverse impact on the productive agricultural land of the farm." It found that the Ottmans' construction of the agricultural accessory building on top of the hill was "against the recommendation of the Town Board."

At the hearing, a former supervisor testified that during a site visit, supervisors advised the Ottmans to build the agricultural accessory building as close to the road as possible. Nevertheless, the Ottmans have vigorously contested the Town's finding of fact. We do not rely on it in this opinion.

16

needlessly consume a greater amount of agricultural land."[14]

¶ 23. The action returned to the circuit court, and the Ottmans amended their complaint. Although they acknowledged that jurisdiction was founded on Wis. Stat. § 68.13, they asserted for the first time that the Primrose Ordinances "constitute a pervasive regulation of land use" and therefore "the scope of certiorari review is modified under Wis. Stat. § 62.23(7)(e)10." Although Wis. Stat. § 62.23(7)(e)10 permits a circuit court to conduct an evidentiary hearing, the Ottmans did not request that the circuit court hold a hearing or take any additional evidence.

¶ 24. In their amended complaint, the Ottmans argued that the Town proceeded on an incorrect theory

---

[14] The Board also noted that "[a]t the time the agricultural accessory building and the field road were approved, the Ottmans were informed by the Town Board that the field road could not be used as a residential driveway." It identified some potential problems with converting the existing field road into a residential driveway: "The width, rise, and ditch distance of the Ottmans' current field road do not meet the driveway criteria and would need significant changes to be brought into compliance." The Board stated: "The Ottmans propose to upgrade the existing field road for the driveway and have committed to meet the requirements of the Driveway Ordinance, but the extensive excavations needed may cause other compliance problems." It concluded that extensive excavation might be required, and that the driveway "may exceed the 25% maximum slope requirement of the Driveway Ordinance."

The Ottmans objected to the inclusion of this information in the decision. They asserted that the process before the Board should have been bifurcated, that once their preliminary application was approved they would be permitted to submit an engineer's report, and that the report would show that a driveway could be built that would not exceed the 25 percent maximum slope requirement or cause other compliance problems.

17

of law. Their primary assertion was that the Board misapplied the farm income requirement contained in the Driveway Ordinance. They contended that the Agricultural Productivity Clause requires only that the land be "capable of producing" income, but that the Town erroneously required the Ottmans to demonstrate that their farm was "currently producing" income.

¶ 25. Based on their interpretation of the farm income requirement, the Ottmans argued that they had demonstrated that their land was "capable of producing" more than $6,000 annually:

> The 20 plus acres currently (2002 through 2006) in corn production yields 80 to 120 bushels per acre.
>
> Were all 43 of the farm's productive acres (i.e., except 4 acres for the Ag Accessory Building, proposed primary farm residence, and driveway) planted in corn, assuming an average yield of 100 bushels of corn per acre, the Ottmans' farm parcel is capable of producing $6,450 of gross income per year at $1.50 per bushel and $9,245 of gross income per year at $2.15 per bushel.

Additionally, the complaint asserted that once Christmas tree harvesting begins in 2010, the farm "will sustain an annual gross income flow of at least $21,000 based solely on wholesale pricing."

¶ 26. The complaint also asserted that the Town's denial was willfully arbitrary, capricious, oppressive, and unreasonable, that the Town proceeded outside its jurisdiction, and that the proceedings were "permeated by bias and fail the standards of neutrality, due process and equal protection." Finally, the Ottmans argued that their proposed site for the residence would have the least impact on agricultural land.

¶ 27. In its decision, the circuit court began by noting that on certiorari review, there is a presumption

18

of correctness afforded to the Board's decision.[15] It determined that the permit denial was not actually a zoning decision, and it therefore conducted review under Chapter 68 rather than under Wis. Stat. § 62.23(7)(e)10. It further concluded that the Board did not erroneously interpret its Ordinances and that it had acted according to the law in applying the least impact standard and the farm income requirement. The court determined that the farm income requirement should be liberally construed in favor of the municipality, and that the Board's interpretation, which required current income rather than speculative income, was reasonable.

¶ 28. The Ottmans filed a motion for reconsideration. Among other arguments, the motion rehashed their prior arguments about the interpretation of the Agricultural Productivity Clause. In addition, the Ottmans argued that the process in front of the Board should have been bifurcated, and that at the preliminary application stage, the Ottmans had not been required to furnish an engineer's plan or any technical details about driveway specifications. Ultimately, the circuit court denied the Ottmans' motion for reconsideration.

¶ 29. In an unpublished decision, the court of appeals affirmed. Addressing the argument that review should be under the zoning statute, Wis. Stat. § 62.23(7), the court determined that "the Ottmans have not explained how our review would differ if we proceeded under § 62.23(7)(e)10." *Ottman v. Town of Primrose,* No. 2008AP3182, unpublished slip op., ¶ 5

---

[15] We recognize that Wisconsin cases often refer to "the presumption of correctness and validity." Like the circuit court, we occasionally use the phrase "presumption of correctness" throughout this opinion for the sake of simplicity.

n.2 (Wis. Ct. App., Feb. 18, 2010). Therefore, the court concluded, "we need not address this argument further." *Id.*

¶ 30. Because it concluded that the Board did not err in rejecting the proposed site for the residence, the court of appeals did not interpret the farm income requirement. *Id.*, ¶ 11. In an unpublished order, the court subsequently denied the Ottmans' motion for reconsideration. *Ottman v. Town of Primrose*, No. 2008AP3182, unpublished order, (Wis. Ct. App., Mar. 25, 2010).

## II

¶ 31. In their petition for review, the Ottmans set forth three questions:

- Is the Town engaged in land use regulation such that this case calls for statutory certiorari review under Wis. Stat. § 62.23(7)(e)10, and limitations on the scope of statutory certiorari should be over-ruled?

- Does the current judicial rule on deference to land use decisions of local governments overly insulate from judicial review the balancing of community interests and individual property rights?

- Does the Town's decision fail to withstand conscientious judicial scrutiny under the customary standard of certiorari review?

The Ottmans' first two questions ask this court to modify the existing standards for certiorari review. The first relates to the scope of review, and the second relates to the amount of deference that should be given to a municipality's conclusions of law. By contrast, the third question asks us to apply the existing standards of certiorari review to the Board's decision.

20

¶ 32. We begin by examining the requested changes to the law. First, we address whether we should overrule limitations on the scope of certiorari review. Next, we clarify the circumstances in which deference is owed to a municipality's decision. Finally, we apply the principles we have set forth to the Board's decision.

A

¶ 33. The Ottmans' argument regarding the appropriate scope of review hinges upon its assertion that the Driveway Ordinance's Agricultural Productivity Clause is a zoning ordinance and therefore, decisions relating to that clause should be reviewed under Wis. Stat. § 62.23(7)(e)10. It is important to note, however, that the Ottmans are not challenging the validity of the Agricultural Productivity Clause.[16] Rather, they simply assert that our Chapter 68 review should be augmented

---

[16] The Wisconsin Realtors Association, which filed an amicus brief, expands upon the Ottmans' argument that the Agricultural Productivity Clause is a zoning ordinance. Without any citation to the record, the Realtors assert that "the Town of Primrose . . . failed to follow the procedures and standards [set forth in Wis. Stat. § 62.23(d) that are] required for adopting a zoning ordinance." The Realtors contend that the Town's Ordinances are invalid and unenforceable.

The Realtors' assertion finds no support in the record. During oral argument, the Ottmans' attorney clarified that the Ottmans "do not agree with the amicus" and are not challenging the validity of any ordinance:

> The Court: I do not read in your briefs that you are challenging that this is a zoning ordinance that was not adopted in accordance with the procedures of a zoning ordinance, and the amicus brief does.

> Attorney Varda: Exactly. We do not. The amicus briefs say that the Ordinances, the Driveway and Building Permit Ordinances, are zoning. And we say yes we agree with that as to the agricultural

by the standards for certiorari review set forth in Wis. Stat. § 62.23.

¶ 34. Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal. *See Acevedo v. City of Kenosha,* 2011 WI App 10, 793 N.W.2d 500, 331 Wis. 2d 218, ¶ 8 (Ct. App. 2010). There are two general categories of certiorari: common law certiorari and statutory certiorari. Michael S. Heffernan, *Appellate Practice & Procedure in Wisconsin* § 28.27 (4th ed. 2006).

¶ 35. Common law certiorari is available whenever there is no express statutory method of review. *Coleman v. Percy,* 96 Wis. 2d 578, 588, 292 N.W.2d 615 (1980). When conducting common law certiorari review, a court reviews the record compiled by the municipality and does not take any additional evidence on the merits of the decision. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson Cnty. Bd. Adjustment,* 131 Wis. 2d 101, 119, 388 N.W.2d 593 (1986). The court's review is limited to: (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was

---

productivity provisions of those Ordinances. . . . And the amicus briefs go on to suggest that the Town's Ordinances are void for lack of approval by the county.

The Court: Are you willing to say that?

Attorney Varda: It is an interesting argument. We do not agree with it.

The Court: No. You are just on scope of review.

Attorney Varda: That is correct, your honor.

such that it might reasonably make the order or determination in question. *Id.* at 119–20; *Snyder v. Waukesha Cnty. Zoning Bd. Adjustment*, 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976).

¶ 36. Certiorari review may also be designated by statute. In that case, unless the statute providing for certiorari further limits or enlarges the scope of review, the reviewing court makes the same four inquiries that are made under common law certiorari review. *State ex rel. Ruthenberg v. Annuity & Pension Bd.*, 89 Wis. 2d 463, 474, 278 N.W.2d 835 (1979).

¶ 37. Here, the parties stipulated to the Board conducting proceedings under the procedure specified in Wis. Stat. Ch. 68. Wisconsin Stat. § 68.13(1) provides that "[a]ny party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination." There is nothing in the text of Wis. Stat. § 68.13(1) limiting or enlarging the scope of certiorari review.[17] Accordingly, the scope of review under Chapter 68 is identical to the scope of common law certiorari review. *See Ruthenberg,* 89 Wis. 2d at 474.

¶ 38. The Ottmans argue that the scope of review should be augmented by the standards for certiorari review set forth in Wis. Stat. § 62.23(7). Unlike Wis. Stat. § 68.13(1), Wis. Stat. § 62.23(7)(e)10 expressly empowers the circuit court to take evidence on the merits of the Board's decision:

> [An aggrieved person may] commence an action seeking the remedy available by certiorari. . . . If necessary for

---

[17] Wisconsin Stat. § 68.13(2) provides that under some circumstances, the proceedings will be transcribed.

the proper disposition of the matter, the court may take evidence, or appoint a referee to take evidence and report findings of fact and conclusions of law as it directs, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review.

¶ 39. Here, neither party asked the circuit court to take additional evidence on any issue, and the circuit court based its review on the record before the Board. Nevertheless, like the court of appeals, we examine in this case whether the scope of review under Wis. Stat. § 62.23(7)(e)10 differs in any other way from the scope of review under Wis. Stat. § 68.13 and common law certiorari.

¶ 40. We have previously interpreted a statute with language that is nearly identical to the current version of Wis. Stat. § 62.23(7)(e)10. *See Brookside Poultry,* 131 Wis. 2d at 120–22. Like § 62.23(7)(e)10, Wis. Stat. § 59.99(10) (1983–84)[18] expanded the courts' role on certiorari review by permitting a circuit court to take additional evidence "[i]f necessary for the proper disposition of the matter." Like § 62.23(7)(e)10, Wis. Stat. § 59.99(10) (1983–84) permitted the court to "re-

[18] Wis. Stat. § 59.99(10) (1983–84) provided:

Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board or bureau of the municipality, may, within 30 days after the filing of the decision in the office of the board, commence an action seeking the remedy available by certiorari. . . . If necessary for the proper disposition of the matter, the court may take evidence, or appoint a referee to take evidence and report findings of fact and conclusions of law as it directs, which shall constitute part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review.

verse or affirm, wholly or partly," and to "modify[] the decision brought up for review."

¶ 41. In *Brookside Poultry,* it was argued that statutory certiorari provides a circuit court with broader latitude to independently determine the merits of the administrative decision. 131 Wis. 2d at 121. We rejected that assertion, concluding that when the circuit court takes no additional evidence, "the circuit court reviews the administrative record under traditional standards of common-law certiorari." *Id.* at 122; *see also Klinger v. Oneida Cnty.,* 149 Wis. 2d 838, 845, 440 N.W.2d 348 (1989) ("When, as in this case, the circuit court takes evidence that is substantially the same as that taken by the Board, deference to the Board demands that the evidentiary hearing should be treated as a nullity for purposes of determining the standard of review to be applied to the Board's decision.").

¶ 42. The rule set forth in *Brookside Poultry* is well established. On many occasions, circuit courts and appellate courts in this state have applied the *Brookside Poultry* rule when conducting certiorari review under the zoning statute, Wis. Stat. § 62.23(7)(e)10. *See, e.g., Lamar Cent. Outdoor, Inc. v. Bd. of Zoning Appeals City of Milwaukee,* 2005 WI 117, ¶ 16, 284 Wis. 2d 1, 700 N.W.2d 87; *Hearst-Argyle Stations, Inc. v. Bd. Zoning Appeals City of Milwaukee,* 2003 WI App 48, ¶ 11, 260 Wis. 2d 494, 659 N.W.2d 424; *Winkelman v. Town of Delafield,* 2000 WI App 254, 239 Wis. 2d 542, 620 N.W.2d 438; *Arndorfer v. Sauk Cnty. Bd. Adjustment,* 162 Wis. 2d 246, 469 Wis. 2d 831 (1991); *State v. Outagamie Cnty. Bd. Adjustment,* 2001 WI 78, ¶ 26, 244 Wis. 2d 613, 628 N.W.2d 376; *State ex rel. Ziervogel v. Washington Cnty. Bd. Adjustment,* 2004 WI 23, ¶ 13, 269 Wis. 2d 549, 676 N.W.2d 401.

¶ 43. In this case, the circuit court did not take evidence on any issue. Accordingly, under existing law, even if we conducted review under Wis. Stat. § 62.23(7)(e)10 the court would simply apply the traditional scope of common law certiorari review. Like the court of appeals, we conclude that the Ottmans have not demonstrated how our review would differ if we proceeded under the standards set forth in Wis. Stat. § 62.23(7)(e)10, as those standards have historically been interpreted by Wisconsin courts. *Ottman v. Town of Primrose,* No. 2008AP3182, unpublished slip op., ¶ 5 n.2 (Wis. Ct. App., Feb. 18, 2010).

¶ 44. The Ottmans appear to acknowledge that in this case under existing law, review under Wis. Stat. Ch. 62 would provide nothing more than what is provided by Wis. Stat. Ch. 68. Therefore, they urge us to overrule or modify the cases limiting the scope of certiorari review under Wis. Stat. § 62.23.

¶ 45. No persuasive rationale is provided for upsetting our longstanding jurisprudence. The argument advanced in favor of altering the existing scope of review is set forth in the Ottmans' brief as follows:

> The legal construction the Town has imposed on its LUP and Driveway Ordinance in [the] Ottmans' case has led to the Town's engagement in the direct regulation of the use of land. . . .
>
> It is said to be well settled law that common law certiorari applies when the circuit court does not take new evidence. . . . The judicial rationale relies upon a blanket presumption of correctness and validity. . . . None of the precedent cases . . . turns on a straightforward adjudication and legal construction as the Ottmans' case does.

¶ 46. The Ottmans' argument about a "blanket presumption of correctness" to a municipality's determi-

nation of a question of law does not directly implicate the scope of common law certiorari review. Our established scope of review permits courts to determine whether the Board proceeded on a correct theory of law. *Brookside Poultry,* 131 Wis. 2d at 119–20. Instead, the Ottmans' argument appears to more directly implicate the presumption of correctness and amount of deference a court should give to a Board's determination of a question of law. We address questions related to deference and the presumption of correctness below in Part II.B.[19]

¶ 47. Because no persuasive rationale is provided for upsetting our longstanding jurisprudence, we decline to alter the established scope of certiorari review under Wis. Stat. § 62.23(7)(e)10. Therefore, like the court of appeals, we determine that we need not address whether the Agricultural Productivity Clause is in fact a zoning ordinance. *Ottman,* unpublished slip op., ¶ 5 n.2. In this case, under both Wis. Stat. § 68.13(1) and Wis. Stat. § 62.23(7)(e)10, our review is the same. It is limited to: (1) whether the Board kept within its juris-

_____

[19] Additionally, citing *State ex rel. Nagawicka Island Corp. v. City of Delafield (Nagawicka II),* 117 Wis. 2d 23, 343 N.W.2d 816 (Ct. App. 1983), the Ottmans appear to urge us to broaden the scope of review by independently balancing the Town of Primrose community interests against restrictions on property owners' rights. The *Nagawicka II* decision does not support the Ottmans' argument.

In *Nagawicka II,* "the zoning ordinance itself" was being challenged as resulting in an unconstitutional taking of property without just compensation. *Id.* at 26. Here, the Ottmans are not challenging the validity of the Driveway Ordinance, nor are they asserting that the Board's application of the Agricultural Productivity Clause results in an unconstitutional taking. Accordingly, we conclude that *Nagawicka II* does not support the Ottmans' suggestion that we should independently balance local interests and property owners' rights.

diction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

B

¶ 48. Having determined the scope of our certiorari review, we turn to examining the deference due to the Board's decision. Wisconsin courts have repeatedly stated that on certiorari review, there is a presumption of correctness and validity to a municipality's decision. *Lamar Outdoor Advertising,* 284 Wis. 2d 1, ¶ 16; *Ziervogel,* 269 Wis. 2d 549, ¶ 13; *Herman v. Cnty. of Walworth,* 2005 WI App 185, ¶ 9, 286 Wis. 2d 449, 703 N.W.2d 720.

¶ 49. During oral argument, the Ottmans' attorney contended that the language in our cases setting forth a presumption of correctness and validity is "meaningless boilerplate," and that affording a "blanket" presumption of correctness to all aspects of a municipality's decision improperly insulates the decision from meaningful judicial review.

¶ 50. The concept of a "presumption" is very familiar in the law, and it is closely related to the concept of a "burden."[20] On certiorari review, the petitioner bears the burden to overcome the presumption of correctness.

---

[20] In a criminal case, for example, there is a presumption of innocence and the State has the burden of proving guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 363 (1970). In evidentiary disputes, a presumption is a rule of law by which a

¶ 51. The presumption of correctness and validity is appropriate because it recognizes that locally elected officials are especially attuned to local concerns. It does not follow, however, that affording the municipality a presumption of correctness eviscerates meaningful review. A court's acknowledgement of a presumption does not mean that the presumption will never be overcome.

¶ 52. The Ottmans correctly observe that certiorari courts apply different standards when reviewing a municipality's discretionary determination, a municipality's determination of a question of fact, and a municipality's determination of a question of law. For example, the court on certiorari review may be asked to review a determination that is entrusted to the discretion of the municipality, such as whether to grant a variance. If the municipality applied the correct legal standards and reached a decision that is not arbitrary, oppressive, or unreasonable, we will not upset a municipality's discretionary determination. *See State ex rel. Warren v. Schwarz,* 211 Wis. 2d 710, 726, 566 N.W.2d 173 (Ct. App. 1997).

¶ 53. The court may also be asked to review a municipality's findings of fact and to determine whether the evidence was such that the municipality might reasonably have reached the decision it reached. A certiorari court may not substitute its view of the evidence for that of the municipality. On certiorari, a

finding of a basic fact gives rise to an existence of a presumed fact, and the party against whom the presumption is directed bears the burden of proving that the nonexistence of the presumed fact is more probable than its existence. Wis. Stat. § 903.01; *see also Keen v. Dane Cnty. Bd. Supervisors,* 2004 WI App 26, ¶ 6, 269 Wis. 2d 488, 676 N.W.2d 154.

court will sustain a municipality's findings of fact if any reasonable view of the evidence supports them. *Kapischke v. Cnty. of Walworth*, 226 Wis. 2d 320, 328, 595 N.W.2d 42 (Ct. App. 1999).

¶ 54. Additionally, a court may be asked to review whether the municipality "kept within its jurisdiction." Or, in reviewing whether the municipality "proceeded according to law," the court may be asked to determine whether the applicant was afforded due process under the state and federal constitutions. These are questions of law, and courts review questions of law independently from the determinations rendered by the municipality or the circuit court.

¶ 55. An interesting question arises when a court is asked on certiorari to review a municipality's interpretation and application of its own ordinance. Like the interpretation and application of a state statute, the interpretation and application of an ordinance is a question of law. *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 32, 498 N.W.2d 842 (1993). Nevertheless, in *Marris,* this court provided guidance as to when the court should give some deference to a municipality's interpretation of its own ordinance.

¶ 56. The issue in that case was whether the City of Cedarburg erred when it determined that Marris's property had lost its status as a legal nonconforming use. On certiorari review, resolution of the issue depended upon the interpretation and application of the phrase "total lifetime structural repairs or alterations," which was found in the Cedarburg ordinance regulating nonconforming uses. *Id.* at 31.

¶ 57. The *Marris* court acknowledged that courts sometimes give deference to a municipality's interpretation of its own ordinance. *Id.* at 33. Nevertheless, the

court was cognizant that "the ordinance in question is substantially similar to a state statute and to ordinances across the state." *Id.* The phrase "total structural repairs or alterations" was found in Wis. Stat. § 62.23(7)(h) (1993–94), the state statute regulating nonconforming uses: "The total structural repairs or alterations in such a nonconforming building shall not in its lifetime exceed 50% of the assessed value of the building unless permanently changed to a nonconforming use."

¶ 58. Given that the Cedarburg ordinance essentially parroted the standard set forth in the state statute, we were concerned "that any discussion of the phrase 'structural repairs' in the Cedarburg ordinance may have significance beyond interpreting the Cedarburg ordinance." *Marris,* 176 Wis. 2d at 33. Under the circumstances, we did not give deference to the City's interpretation because "one board's interpretation of the language in a single case should not be viewed as controlling or persuasive." *Id.* In other words, we declined to permit the City of Cedarburg to establish the interpretation of a statewide standard.

¶ 59. We take the following lessons from *Marris.* A court should not defer to a municipality's interpretation of a statewide standard. Doing so would give one locality disproportionate authority to influence state standards established by the legislature.

¶ 60. In other circumstances, however, the language of the municipality's ordinance appears to be unique and does not parrot a state statute but rather the language was drafted by the municipality in an effort to address a local concern. In such a case, the municipality may be uniquely poised to determine what

31

that ordinance means. Then, applying a presumption of correctness, we will defer to the municipality's interpretation if it is reasonable.

¶ 61. As in other situations involving deference to interpretations of statutes and rules, deference to the municipality's interpretation of its own ordinance "does not mean that the court accepts the [municipality's] interpretation without a critical eye." *Racine Harley Davidson, Inc. v. State Division Hearings & Appeals,* 2006 WI 186, ¶ 15, 292 Wis. 2d 549, 717 N.W.2d 184. A court will not defer to an interpretation that is unreasonable. *Id.*

■■■■

¶ 62. A municipality's interpretation of its own ordinance is unreasonable, for example, if it is contrary to law, if it is clearly contrary to the intent, history, or purpose of the ordinance, or if it is without a rational basis. *Id.,* ¶ 17. An interpretation that directly contravenes the words of the ordinance is also unreasonable. *Id.*

¶ 63. The Ottmans urge us to provide additional guidance. They point to our jurisprudence on deference to state administrative agencies, which establish three levels of deference, great weight deference, due weight deference, and no deference, that "take into account the comparative institutional qualifications and capabilities of the court and the administrative agency." *Id.,* ¶ 13. They urge us to apply these three levels of deference when reviewing a municipality's interpretation of its own ordinance.

■■■■

¶ 64. Although we have borrowed from cases setting forth the framework for reviewing administrative agency determinations in our discussion above, we

decline to graft that framework wholesale onto our framework for reviewing municipal decisions. The considerations that guide our decisions when reviewing administrative agency determinations would be unnecessarily complex and cumbersome when applied to municipality decisions.

¶ 65. For example, a central consideration in administrative agency cases is whether the agency has been charged by the legislature with the administration of a state statute. *Id.*, ¶¶ 16, 18. That consideration is inapplicable when reviewing a unique municipal ordinance that was drafted by the municipality rather than the legislature. The framework for reviewing administrative agency decisions, which grew out of the division of authority between the judicial and executive branches of state government and the interpretation of state law, does not fit comfortably with the division of authority between the state judiciary and local government in interpreting local law.

### III

¶ 66. We turn next to applying the principles set forth above to the Board's decision. The Ottmans challenge the Board's interpretation of the Agricultural Productivity Clause and the Board's application of that clause to deny their application for a driveway permit. They contend that the Board did not proceed according to law because its interpretation of the farm income requirement violates the Ordinance's plain language. They further assert that the evidence was such that the Board could not reasonably have made its determination that the proposed building site would not have the least impact upon agricultural land. They contend the

33

Board's rejection of the proposed building site was based on findings of fact that are not supported by substantial evidence.

¶ 67. We begin by examining the farm income requirement to determine whether the Board proceeded according to law. In relevant part, the Agricultural Productivity Clause provides that "[n]o driveway shall be approved in the Town of Primrose if the Town Board finds that the driveway will adversely impact productive agricultural land,[21] unless . . . the person requesting the permit can show that the parcel to be served by the driveway is capable of producing at least $6000.00 of gross income per year." Town of Primrose Driveway Ordinance 1.10. Unlike the ordinance at issue in *Marris,* the Agricultural Productivity Clause appears to be unique and does not parrot the language of a state statute. Applying the presumption of correctness and validity here, we will defer to the Board's interpretation if it is reasonable.

¶ 68. The Board and the Ottmans disagree about what it means to "show that the parcel . . . is capable of producing at least $6000.00 of gross income per year." The Board concluded that because the Ottmans "cur-

---

[21] The Ottmans also assert that the Agricultural Productivity Clause is not even implicated here because approving the driveway would have "zero impact" on productive agricultural land. However, they ignore the Board's finding of fact that the entire 47–acre parcel, including the proposed site for the residence, is productive agricultural land. The Board's finding of fact is supported by substantial evidence, including soil tests introduced by both parties. Accordingly, the Board's implicit conclusion that extending the existing field road and placing a permanent residence on the land would have an adverse impact on productive agricultural land is reasonable.

34

rently . . . receive no agricultural income from the sale of trees from the property [they] therefore do not currently meet the farm income standards" of the Town of Primrose Driveway Ordinance. Implicitly, the Board determined that in showing that the parcel is "capable of producing" a certain amount of agricultural income, an applicant must provide evidence of actual income rather than speculation about income that could be produced.

¶ 69. By contrast, the Ottmans argue that the Ordinance requires them to present evidence of what they could produce, not necessarily what they are producing or have produced. They argue that the plain meaning of the phrase "capable of producing" does not require them to prove that they have actually received any income from the property.

¶ 70. The Ottmans correctly assert that an interpretation by the Board which contravened the plain meaning of the Ordinance would be unreasonable and not entitled to deference. However, a close examination of the Ottmans' "plain meaning" interpretation raises significant questions.

¶ 71. The phrase that the Ottmans rely upon, "capable of producing," does not exist in isolation. Rather, the Agricultural Productivity Clause requires the Ottmans to "show" that the parcel is "capable of producing" $6,000 in income. The verb "show" suggests that applicants must provide something beyond conjecture about what the property could produce. It suggests that applicants may be required to provide evidentiary support to back their claims of what a parcel is "capable of producing" by demonstrating what the parcel can actually produce. The Ottmans' "plain meaning" interpretation of the farm income requirement based on the

three-word phrase "capable of producing" is not so plain when the language of the Ordinance is read as a whole.

¶ 72. Given that there is tension between the Ottmans' interpretation of the phrase "capable of producing" and the language of the Ordinance when read as a whole, we conclude that the Board's interpretation does not contravene the plain meaning of the Ordinance. Rather, we determine that the phrase "show that the parcel . . . is capable of producing" is ambiguous. Accordingly, we must examine whether the Board's interpretation is reasonable.

¶ 73. The Board interprets the farm income requirement to require an applicant to prove actual income. This interpretation furthers the Town of Primrose's stated goals related to the preservation of agricultural land. The Town of Primrose Land Use Plan sets forth the following objectives: "preserve productive farmlands for continued agricultural use"; "discourage land uses which conflict with agriculture"; and "maintain agriculture as the major economic activity and way of life within the Town." Requiring actual agricultural income promotes the preservation of agricultural land by encouraging residential development that will benefit actual agricultural use of the land and by discouraging development that is unrelated to agricultural use.

¶ 74. By contrast, an interpretation that required only speculation about the amount of income that the property was "capable of producing" would appear to render the farm income requirement nearly meaningless. One can imagine that most property owners could produce a hypothetical farm plan purporting to demonstrate that their farm was "capable of producing" at least $6,000 in income. A requirement that would be so easily satisfied regardless of whether the property owner actually intended to preserve productive farm-

lands for continued agricultural use would undermine the Town of Primrose's stated goals related to the preservation of agricultural land.

¶ 75. Under the circumstances presented here, we conclude that the Board's interpretation of the farm income requirement is entitled to a presumption of correctness, and we will accord it deference. The Board's interpretation does not contravene the plain language of the Ordinance, and further, there is no allegation that it is contrary to any other law or that it lacks a rational basis. The Board's interpretation is consistent with the purpose of the Ordinance. The Ottmans have not met their burden of showing that the Board's interpretation is unreasonable.

¶ 76. Having deferred to the Board's interpretation of the farm income requirement, we examine the Board's application of that interpretation to the evidence presented at the hearing. To meet the farm income requirement, the Ottmans were required to provide evidence of actual income derived from the parcel rather than speculation about how much income they could produce.

¶ 77. The Ottmans acknowledge that they did not introduce any evidence that the parcel had actually produced $6,000 in income from the sale of Christmas trees. However, in their reply brief to this court, they argue that they did show that the parcel is capable of producing $6,000 in income from the sale of field corn. In support, they point to two exhibits that were introduced at the hearing: (1) a written statement made by Al Hanna, the neighbor who rented a portion of the Ottmans' property and grew field corn; and (2) a chart

calculating the gross income that would be received from various yields of corn per acre sold at various prices.[22]

¶ 78. These exhibits do not show that Hanna received $6,000 in annual income from the field corn that he grew on the Ottmans' property. Hanna's signed letter stated: "Depending on growing conditions, I have had yields approximately between 80 and 120 bushels per acre." It did not state the number of bushels actually harvested or the price at which Hanna sold the corn. The Ottmans did not present any tax documents or any other statements setting forth the income that was actually generated from the sale of corn that was grown on the Ottmans' parcel.

¶ 79. Although Hanna did not indicate how much income he had received from the sale of corn grown on the property, the Ottmans speculated about what Hanna could have made. The chart they introduced, which appears to have been generated by their attorney, asserted that Planning Commissioner Dale Judd "indicated he had sold corn for $1.50, $2.10 and $2.15/bushel."

¶ 80. According to the Ottmans' chart, Hanna would have exceeded the $6,000 farm income requirement if he had a yield of at least 100 bushels of corn per acre and was able to sell that corn at $2.15 a bushel. The chart also indicates that if he had a yield of 80 bushels of corn per acre and sold that corn for $1.50 a bushel, he would have produced only $3,480 in income.[23] The Board could reasonably have disregarded this speculation about what Hanna might or might not

---

[22] The Ottmans did not introduce any evidence showing the rental income they received from Hanna. At oral argument, their attorney conceded that the annual rent actually paid was far less than $6,000.

[23] The Ottmans' amended complaint appears to acknowledge that the property had not produced $6,000 in income from

38

have received as income when it found that the farm income requirement had not been met.

¶ 81. On certiorari, a court will sustain a municipality's findings of fact if any reasonable view of the evidence supports them. *Kapischke,* 226 Wis. 2d at 328. Applying their interpretation of the farm income requirement, the Board made a finding of fact that the farm income requirement was not met. The Ottmans have failed to demonstrate that no reasonable view of the evidence supports that finding. Therefore, we conclude that the Ottmans have not overcome the presumption of correctness.[24]

¶ 82. In sum, because the Ottmans have failed to provide a persuasive rationale for upsetting our long-standing jurisprudence, we decline to alter the established scope of statutory certiorari. We further decline to graft the framework for reviewing administrative agency determinations onto our framework for reviewing municipal decisions. In situations where the language of a municipality's ordinance appears to be unique and does not parrot a state statute but rather was drafted by the municipality in an effort to address a local concern, we will defer to the municipality's interpretation if it is reasonable.

---

the sale of field corn. The amended complaint explained that *"[w]ere all 43 of the farm's productive acres . . . planted in corn,* assuming an average yield of 100 bushels of corn per acre, the Ottmans' farm parcel is capable of producing $6,450 of gross income per year at $1.50 per bushel and $9,245 of gross income per year at $2.15 per bushel. (Emphasis added.)

[24] Having determined that the Ottmans failed to satisfy the farm income requirement, we need not address the Ottmans' contentions regarding the building site and various findings of fact.

¶ 83. Under the circumstances presented here, we conclude that the Board's interpretation of the farm income requirement is entitled to a presumption of correctness, and we will accord it deference. The Ottmans have not met their burden of showing that the Board's interpretation is unreasonable. Applying its interpretation, the Board made a finding of fact that the farm income requirement was not met, and the Ottmans have failed to demonstrate that no reasonable view of the evidence supports that finding. Therefore, we conclude that the Ottmans have not overcome the presumption of correctness. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.