**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 2, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP108**

STATE OF WISCONSIN

Cir. Ct. No. 2024CV3206

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN EX REL. WORLD CLASS TATTOOS LLC AND STATE OF WISCONSIN EX REL. FRANCISCO V. FLORES, JR.,

PETITIONERS-APPELLANTS,

V.

CITY OF MILWAUKEE COMMON COUNCIL AND CITY OF MILWAUKEE,

RESPONDENTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: THOMAS J. McADAMS, Judge. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. World Class Tattoos LLC and its licensing agent, Francisco V. Flores, Jr. (collectively World Class), appeal the order of the circuit court affirming the decision of the City of Milwaukee Common Council, which denied the renewal of World Class's business license. We reject World Class's arguments, and affirm.

## BACKGROUND

¶2 On June 30, 2023, World Class's business license expired; however, the business continued operating. On October 12, 2023, after being contacted by the Milwaukee Health Department, World Class applied for a renewal of the license to the Common Council. Flores asserted that the license had expired due to an oversight.

¶3 A hearing was scheduled and noticed before the Licenses Committee of the Common Council. Attached to the notice was a police report regarding the execution of a search warrant in April 2023 at the building where World Class operated. According to the police report, Flores, who had a prior felony conviction, was found to be in possession of six firearms along with an assortment of firearm accessories.[1] One of the firearms had a silencer/suppressor attached. Police also recovered a substance that tested positive for THC, in an amount believed to be for distribution.

¶4 At the hearing before the Licenses Committee, the police raid was discussed. Flores stated that his main residence was in Green Bay and he was not present during the raid. Flores denied that the firearms were his and indicated that

---

[1] We note that the firearms were not found on Flores's person, but in the building.

multiple people had access to the building. Flores also noted that the THC was found in a car not belonging to Flores, and not in the building. Two neighboring businesses spoke in support of World Class and Flores. The Licenses Committee recommended renewing the license with a 45-day suspension.

¶5      World Class, by counsel, wrote a letter to the Common Council objecting to the recommendation. Alderman Scott Spiker requested that the application be sent back to the Licensing Committee to respond to discrepancies in the police report and have the relevant officers present. The Common Council agreed. A second hearing was scheduled and noticed before the Licensing Committee.

¶6      At the second hearing, it was noted that criminal charges had been filed against Flores.[2] The Licensing Committee decided to hold the application until Flores's criminal case was resolved.

¶7      World Class requested a third hearing to avoid the license application being held indefinitely. A third hearing was scheduled and noticed. At the third hearing, the Licenses Committee heard testimony from the police officers who were present during the execution of the search warrant. The police captain explained that they had received information that World Class was involved in narcotics trafficking and that the business had firearms. A violent crimes team investigated the claims and found enough evidence to obtain a search warrant. During the execution of the warrant, firearms were found in the upper

---

[2] Flores was charged with four counts of felon in possession of a firearm.

half of the building.[3]  According to the police, based on body camera footage and a previous report of burglary at the building, they believed Flores resided in the building.

¶8    The Licenses Committee recommended outright non-renewal of World Class's business license because the evidence "demonstrate[d] the operation results in a threat to health, safety and welfare of the public."  Following this recommendation, over the objection of World Class's counsel, the Common Council affirmatively voted to not renew the business license of World Class.

¶9    World Class filed a petition for certiorari review with the circuit court seeking to reverse the Common Council's decision to not renew the license. After briefing, the circuit court issued a decision denying the petition.  This appeal follows.

## DISCUSSION

¶10    On certiorari review, we review de novo the Common Council's decision, not the decision of the circuit court.  *See State ex rel. Bruskewitz v. City of Madison*, 2001 WI App 233, ¶11, 248 Wis. 2d 297, 635 N.W.2d 797.  As such, this court's review is "limited to the record" and addresses only whether the municipality's actions were: "(1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) supported by evidence such that the [municipality] might reasonably make the order or determination in question."  *See State ex rel. City of*

---

[3] One of the officers noted that the upper half of the building was divided into a tattoo parlor and a residence with a kitchen and bedrooms.  The firearms were found on both sides.

4

*Waukesha v. City of Waukesha Bd. of Rev.*, 2021 WI 89, ¶19, 399 Wis. 2d 696, 967 N.W.2d 460; *Bruskewitz*, 248 Wis. 2d 297, ¶11.

¶11 On certiorari review, Wisconsin courts "have repeatedly stated that … there is a presumption of correctness and validity to a municipality's decision." *Ottman v. Town of Primrose*, 2011 WI 18, ¶48, 332 Wis. 2d 3, 796 N.W.2d 411. A court "may not substitute its view of the evidence for that of the municipality" and "the petitioner bears the burden to overcome the presumption of correctness." *Id.*, ¶¶50, 53.

¶12 On appeal, World Class raises three primary arguments. We address each argument in turn.

¶13 First, according to World Class, the Common Council violated the notice requirements under the Milwaukee Code of Ordinances (MCO) and the due process requirements of the United States Constitution. According to World Class, the notice issued prior to the third hearing "failed to adequately state the precise reasons for potential nonrenewal." World Class asserts that the notice is "no more than a regurgitation of all possible grounds for revocation, suspension, or nonrenewal rather than a 'statement of specific reasons' for revocation, suspension, or nonrenewal," and did not include a standard of proof.

¶14 Under MCO § 85-3 (2003), the Licenses Committee and the Common Council must provide written notice of the possibility for nonrenewal, suspension, or revocation, including "a statement of the specific reasons for revocation, suspension or nonrenewal." MCO § 85-3.1.b-3.

¶15 Here, contrary to World Class's argument, the notices were sufficiently specific. For example, the notice for the third hearing indicated that

the license application could be denied for reasons including "pending charges against or the conviction of any felony, misdemeanor, municipal offense or other offense … by the applicant or by any employee or other agent of the applicant." The notice further indicated that the testimony from the two previous hearings "may also be considered" and also stated "[s]ee attached police report or correspondence."

¶16 World Class argues that the notices in this case were the same as the licensing notices in *Family Dollar Stores v. City of Milwaukee*, No. 2021AP1432, unpublished slip op. (WI App Oct. 11, 2022), which were held to be defective.[4] We do not find *Family Dollar* persuasive as it is fact-specific and distinguishable.

¶17 In *Family Dollar*, the first notice at issue did not have any police reports attached and only had an email to an alderperson. *Id.*, ¶28. The second notice had the same email, a letter designating the store as a nuisance which listed four incidents to which the Milwaukee Police Department had responded, and a copy of a letter notifying Family Dollar that its abatement plan to address the nuisance issues had been accepted by the Milwaukee Police Department. *Id.* In its decision, this court observed that the attachments to the notices were related to issues that had already been addressed by the store and there were no further citations issued in the time frame between the approval of the abatement plan and the hearings. *Id.*, ¶29. Moreover, there were no other details specific to Family Dollar's conduct or activities that were of concern. *Id.* Thus, this court concluded

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (2023-24) (stating that an unpublished authored opinion issued on or after July 1, 2009 may be cited for its persuasive value).

All references to the Wisconsin Statutes are to the 2023-24 version.

that there was not sufficient notice of the evidence that the Licenses Committee was going to consider at the hearing. *Id.*, ¶30.

¶18    In contrast to *Family Dollar*, here, the notices referenced a detailed police report about the search warrant and described the seized items. Unlike in *Family Dollar*, there was no indication or inference that this concern was abated prior to the hearing dates. Accordingly, there was sufficient notice of the evidence to be considered and we are not persuaded that the notices in this case violated the MCO or due process.

¶19    Second, World Class argues that there was "unlawful discrimination based upon pending criminal charges." In support, World Class argues that its license was denied based on Flores's arrest record in violation of the Wisconsin Fair Employment Act (WFEA). Even if we assume we have the ability to review this claim,[5] this claim fails because it involves an alleged claim of discrimination against a business, not an individual. The WFEA protects individuals against discrimination, not businesses. *See* WIS. STAT. § 111.31(1).

¶20    Lastly, World Class argues that the decision for non-renewal was arbitrary.

¶21    Here, World Class had three separate hearings. During the hearings, World Class was given an opportunity to rebut the police report, explain how the business would operate going forward, and explain whether the business posed a risk to the health and safety of the community. In particular, in regard to the third

---

[5] Discrimination based on arrest or conviction records falls under the exclusive jurisdiction of the Department of Workforce Development. *See* WIS. STAT. §§ 111.31, 32(4), 39.

hearing, the Licenses Committee issued a report with findings of fact and conclusions of law in support of its non-renewal recommendation. The record reflects that the Common Council members present read the report and recommendation and voted to approve the non-renewal.[6]

¶22 Based on the record, we are not persuaded that the Common Council's decision was arbitrary. A decision "need only contain enough information for the reviewing court to discern the basis" of the decision, and a "detailed or explicit explanation of the … reasoning is not necessary." *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶49, 362 Wis. 2d 290, 865 N.W.2d 162. Here, the Common Council's decision was reasonable in response to the particular circumstances presented.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] We note that World Class asserts that the police testimony at the third hearing was "incomplete" and "selective." World Class, however, does not specify what inquiries were prohibited and why such inquires would have been material. We do not address undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).