COURT OF APPEALS
DECISION
DATED AND FILED

March 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2282**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV102

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN EX REL. KATHLEEN K. NAVIS,
TERRANCE BRANDNER, MARK MOEDE, HOLLY HEBEL,
WILLIAM SCHUTTE, DONNA SCHUTTE, DONALD R. JERVIS,
DANIEL J. MEUNIER, ANTOINETTE CHRISTENSON, GENE R. BADEAU,
EDMUND V. SCHMIDT AND THOMAS RONDEAU,

PETITIONERS-APPELLANTS,

V.

DOOR COUNTY BOARD OF ADJUSTMENT, CARY LAURITZEN
AND CHERIE LAURITZEN,

RESPONDENTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Door County: DAVID L. WEBER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kathleen Navis, Terrance Brandner, Mark Moede, Holly Hebel, William Schutte, Donna Schutte, Donald Jervis, Daniel Meunier, Antoinette Christenson, Gene Badeau, Edmund Schmidt and Thomas Rondeau (collectively, Navis) appeal from a circuit order that affirmed the grant of a conditional use permit to Cary and Cherie Lauritzen by the Door County Board of Adjustment (the Board). We affirm upon the limited issues available under certiorari review.

## BACKGROUND

¶2 The Lauritzens applied for a conditional use permit to develop and operate a recreational vehicle campground upon a vacant 21.2-acre parcel of farmland. The proposed development would have 130 campsites; a two-story check-in building containing a store, bathroom, shower and laundry facility; and another building with additional showers and bathrooms.

¶3 The Door County Resource Planning Committee (the Committee) held a public hearing to consider the permit application. The Committee granted the permit subject to sixteen conditions. Over 100 area residents and property owners appealed the Committee's decision to the Board.

¶4 The Board held a hearing at which objectors raised concerns about: (1) adverse effects of the proposed development on property values; (2) conflict with nearby residential use from noise, dust, and campfire smoke; (3) groundwater contamination from the high-volume septic system; (4) traffic concerns relating to speed, visibility and congestion; (5) safety of pedestrians and

bicyclists traveling between the campground and town; and (6) changing the character of the neighborhood from a quiet area to a tourist destination. The Board denied the appeal, but it modified the permit to include a total of twenty-three conditions.

¶5     Navis next filed an action in the circuit court, seeking review of the Board's decision pursuant to WIS. STAT. § 59.694(10) (2019-20). The court remanded the matter to the Board to answer two questions relating to the traffic safety conditions in the permit. In response, the Board modified two of the permit conditions. The court then issued a final order affirming the Board's approval of the modified permit.

¶6     Navis now appeals the circuit court's decision. She contends: (1) DOOR COUNTY, WI, COMPREHENSIVE ZONING ORDINANCE § 11.04(5)(b) (Sept. 22, 2020) (the Ordinance),[1] establishes minimum criteria an applicant must demonstrate in order to obtain a conditional use permit; (2) applicants carry the burden of proof on all of the criteria set forth in § 11.04(5)(b); (3) the applicants here failed to show the proposed use would not adversely affect property values; (4) the applicants failed to show the proposed use is similar to, and comparable with, other uses in the area; (5) the applicants failed to show the proposed use is consistent with the Door County Comprehensive and Farmland Preservation Plan (the Farmland Preservation Plan); and (6) the applicants failed to show the proposed use provides safe pedestrian access. Rather than summarize the voluminous transcripts and materials submitted to the Board,

---

[1] The Door County, WI, Comprehensive Zoning Ordinance is available at https://www.co.door.wi.gov/DocumentCenter/View/3239/CompZoningOrdinance-1.

we will incorporate additional facts relevant to these specific issues in our discussion below.

## DISCUSSION

¶7     Judicial review of administrative proceedings by statute is akin to common law certiorari review.  *See **Williams v. Housing Auth. of the City of Milwaukee***, 2010 WI App 14, ¶10, 323 Wis. 2d 179, 777 N.W.2d 185 (2009).  We review the decision of the administrative body rather than that of the circuit court.  ***Board of Regents v. Dane Cnty. Bd. of Adjustment***, 2000 WI App 211, ¶10, 238 Wis. 2d 810, 618 N.W.2d 537.  The scope of our review is limited to considering whether the administrative body:  (1) kept within its jurisdiction; (2) proceeded on a correct theory of law; (3) acted in a manner that was not arbitrary, oppressive, or unreasonable based upon its will rather than its judgment; and (4) reached a reasonable conclusion based upon evidence in the record.  ***Id.***

¶8     As to whether an administrative body proceeded on a correct theory of law, we will independently determine the proper interpretation of an ordinance.  ***Id.***, ¶11.  An administrative body proceeds on a correct theory of law when it relies on the applicable ordinances and cases and applies them properly.  ***Edward Kraemer & Sons v. Sauk Cnty. Bd. of Adjustment***, 183 Wis. 2d 1, 8-9, 515 N.W.2d 256 (1994).  As to the demonstration of a rational, nonarbitrary basis for judgment, the administrative body's "reasoning need not be embodied in a written decision as long as it is reflected in a transcript of the proceedings."  ***Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals of Milwaukee***, 2005 WI 117, ¶3, 284 Wis. 2d 1, 700 N.W.2d 87.  As to whether the administrative decision was based upon evidence in the record, we must examine the record for any substantial evidence that supports the administrative body's determination.  ***Currie v.***

*DILHR*, 210 Wis. 2d 380, 387, 565 N.W.2d 253 (Ct. App. 1997). The substantial evidence test does not require a preponderance of the evidence, merely that "reasonable minds could arrive at the same conclusion as the [administrative body]" based on the record before it. *Kitten v. DWD*, 2002 WI 54, ¶5, 252 Wis. 2d 561, 644 N.W.2d 649. We may not substitute our judgment for that of the administrative body as to the weight or credibility of the evidence on a finding of fact. *Advance Die Casting Co. v. LIRC*, 154 Wis. 2d 239, 249, 453 N.W.2d 487 (Ct. App. 1989).

¶9    We will structure our discussion of the six issues Navis raises on appeal around the limited questions this court may address on certiorari review. We treat Navis's arguments regarding the minimum criteria and the burden of proof for obtaining a conditional use permit as a claim that the Board proceeded on an incorrect theory of law. We treat her arguments that four specific criteria were not met as a claim that there was not substantial evidence in the record to support the Board's decision to grant the permit.

## 1. Applicable Law for Obtaining a Conditional Use Permit

¶10    We understand Navis to assert that the Board proceeded on an incorrect theory of law by failing to require the Lauritzens to carry the burden of proof on all of the specific criteria in the Ordinance for obtaining a conditional use permit. In particular, Navis contends the Lauritzens were required to demonstrate that the proposed project: (1) would not adversely affect nearby property values; (2) was similar to other uses in the area: (3) was consistent with the Farmland Preservation Plan; and (4) was safe for pedestrians and bicyclists.

¶11    The Ordinance requires the Committee (and ultimately the reviewing Board) to review each permit application for compliance with applicable

procedural requirements and to "determine that the proposed use at the proposed location will not be contrary to the public interest and will not be detrimental or injurious to the public health, public safety and character of the surrounding area." DOOR COUNTY, WI, COMPREHENSIVE ZONING ORDINANCE § 11.04(5)(a). The Ordinance continues, in relevant part:

> (b) To aid in the review of the proposed project against the above criteria, the Resource Planning Committee shall evaluate the following specific criteria as applicable, but shall not be limited thereto:
>
> > 1. Whether the proposed project will adversely affect property values in the area.
> >
> > 2. Whether the proposed use is similar to other uses in the area.
> >
> > 3. Whether the proposed project is consistent with the Door County Comprehensive and Farmland Preservation Plan or any officially adopted town plan.
> >
> > ....
> >
> > 8. Provision of safe vehicular and pedestrian access.

*Id.*, § 11.04(5)(b). The burden of proof to demonstrate the specific criteria listed in subsec. (b) lies with the applicant, and an applicant's failure to satisfy the criteria "may be deemed grounds to deny" the permit. *Id.*, § 11.04(5)(c). In addition, the Committee "may, in approving an application for a conditional use permit, impose such restrictions and conditions that it determines are required to prevent or minimize adverse effects from the proposed use …." *Id.*, § 11.04(6).

¶12 Navis interprets these provisions as imposing mandatory minimum standards for granting a conditional use permit, on which the applicants bear the burden of proof. That is to say, Navis contends the provisions collectively require

the Board either to deny a permit application if the applicants fail to satisfy the burden of proof on any of the criteria listed in § 11.04(5)(b) of the Ordinance, or to at least impose sufficient conditions on the permit to fully satisfy each criterion. We agree that the applicants bear the burden of proof on each criterion, but we disagree that all of the criteria in subsec. (b) must be fully satisfied before the Board may issue a permit.

¶13    We apply the same rules of interpretation to ordinances as we do to statutes. *Schwegel v. Milwaukee Cnty.*, 2015 WI 12, ¶22, 360 Wis. 2d 654, 859 N.W.2d 78.  If the meaning of an ordinance is clear from its plain language, our inquiry ends. *Vilas Cnty. v. Bowler*, 2019 WI App 43, ¶17, 388 Wis. 2d 395, 933 N.W.2d 120.  The language in an ordinance is to be "given its common, ordinary and accepted meaning, except that technical or specifically defined words or phrases are given those respective meanings." *Id.*  The language must also be interpreted in the context in which it is used, in relation to surrounding or closely related provisions, so as to avoid absurd or unreasonable results. *Id.*

¶14    In context, it is clear that the specific criteria set forth in § 11.04(5)(b) of the Ordinance are not mandatory minimum requirements that must all be satisfied before the Board may issue a conditional use permit.  The Ordinance plainly sets forth two "determin[ations]" the Board must make before issuing a conditional use permit: (1) the proposed use at the proposed location will not be contrary to the public interest; and (2) the proposed use at the proposed location will not be detrimental or injurious to the public health, safety, and character of the surrounding area.  The additional specific criteria set forth in § 11.04(5)(b) are to "aid" the Board in "evaluat[ing]" whether to make the two required determinations.

¶15    As a result, an applicant's failure to carry the burden of proof on any particular criterion in § 11.04(5)(b) of the Ordinance is not dispositive of the required determinations the Board must make.  Rather, such a failure "may" be deemed grounds to deny the permit.  This language indicates the Board has discretion to determine the applicability and weight to give each of the specified criteria in making its overall assessments of the impact of the proposed use on the public interest and the public health, safety, and welfare of the surrounding area.  We reject Navis's contention that the word "may" should be interpreted as mandatory because the zoning ordinance explicitly defines it as permissive.  DOOR COUNTY, WI, COMPREHENSIVE ZONING ORDINANCE § 13.01(5).

¶16    The fact that the Board is authorized to make conditions to "minimize" adverse effects from the proposed use further supports our conclusion that the Ordinance does not require an applicant to prove that there would be no adverse effects related to any of the criteria before the Board can issue a permit.  It would be meaningless to give the Board power to minimize adverse effects if an applicant were required to prove that there would be no adverse effects relating to any of the criteria in the first instance.  Moreover, unlike the ordinance at issue in *Edward Kraemer & Sons*, the Ordinance here did not limit the Board's authority to attach conditions only to "approved applications" that had already satisfied applicable criteria.  *Cf. Edward Kraemer & Sons*, 183 Wis. 2d at 16.  Rather, the Board is authorized to impose restrictions or conditions "in approving an application," meaning that the conditions may be considered as part of the determination as to whether to grant the permit.

¶17    We additionally reject Navis's argument that any appeal of a conditional use permit would be meaningless if none of the criteria in § 11.04(5)(b) of the Ordinance actually need to be satisfied.  The Board's decision

on a conditional use permit is still subject to the requirements that it not be arbitrary and that it be supported by substantial evidence in the record.

¶18    In sum, Navis does not dispute that the Board discussed and evaluated all of the criteria outlined in § 11.04(5)(b) of the Ordinance—including the four specific criteria challenged by Navis on this appeal.  The Board then imposed twenty-three conditions pursuant to § 11.04(6) all of which it deemed necessary to mitigate any adverse effects related to those criteria.  Finally, the Board determined, as required by § 11.04(5)(a), that the proposed use at the proposed location would not be contrary to the public interest and would not be detrimental or injurious to the public health, safety, and character of the surrounding area.  We conclude the Board relied on the relevant ordinances and applied them properly, thus proceeding on a correct theory of law.

## 2.  Sufficiency of the Evidence

¶19    We next consider whether the evidence before the Board was such that reasonable minds could reach the conclusions that the proposed campground—subject to the twenty-three conditions imposed by the Board— would not be contrary to the public interest and would not be detrimental or injurious to the public health, safety, and character of the surrounding area.  Navis does not directly address this question because her arguments are premised on the mistaken theory that there needed to be sufficient evidence presented by the Lauritzens to show that each and every criterion under § 11.04(5)(b) of the Ordinance had been individually and fully satisfied.  We will reframe Navis's arguments as a contention that the Board could not reasonably have reached its decision in light of evidence supporting her view that the proposed campground:  (1) would adversely affect property values; (2) was dissimilar to and

incompatible with other uses in the area; (3) was inconsistent with the Farmland Preservation Plan; and (4) was unsafe for pedestrians and bicyclists.

## A. Property Values

¶20    The Board was presented with conflicting opinions regarding the effect that the proposed campground would have on property values.[2]  On one hand, Phyllis Zatlin testified that her daughter, a realtor, had told her the project would lower property values.  Craig Nelson testified about a study he read that found a high concentration of rental properties in an area (which he analogized to recreational vehicles renting campground space) decreased residential property values by fourteen percent.  J.R. Jarosh testified that it was impossible to believe the value of adjacent properties would go up, although he did not think property values in Jacksonport would drop in the long term.  Guy Pustaver testified that he could not imagine anyone wanting to purchase a home close to a development that can hold upward of 400 people, barking dogs, and vehicles for up to eight months of the year.  Navis's lawyer, Matthew Fleming, testified to his belief, based on involvement in past cases, that the increased concentration of people, along with the smoke and noise, would decrease nearby property values.

¶21    On the other hand, Elizabeth LeClair testified that her own business, a lodge, had also brought increased visitors and traffic to the area, but it had resulted in increased property values in the area.  Lisa Bley-Bieri, who served on the planning commission, testified that she had recently sold several area

---

[2] The parties do not raise any objections to the hearsay nature of much of the testimony, or the lack of foundation or explanation as to the occupations of some of the people testifying or testified about.  We therefore need not discuss whether the rules of evidence apply to public hearings of this nature.

properties after disclosing plans for the campground. One of the properties was within 1,500 feet of the proposed campground, and a second property was within one mile. Bley-Bieri did not believe there had been an adverse effect from the proposed campground on her ability to sell the properties, and she noted that no one had a crystal ball to show how property values would be affected in the future. Randy Halstead testified that Troy Zachariason had told him that the proposed campground would absolutely not lower property values based upon the example of Monument Point Campground in Egg Harbor. After that campground was built, new home construction began all around it.

¶22    The testimony of LeClair, Bley-Bieri, and Halstead constituted substantial evidence upon which the Board was entitled to rely in making its decision. Reasonable minds could conclude, based on that testimony, that concerns about decreased property values were too speculative to preclude determinations that the proposed campground would not be contrary to the public interest and would not be detrimental or injurious to the public health, safety, and character of the surrounding area.

*B. Other Uses in the Area*

¶23    The Board was presented with evidence that there were eight other campgrounds between four and eight miles from the Lauritzens' proposed campground. Navis argues that the Board should not have considered any of those campgrounds as other uses in the area because they were not located in the immediate surrounding area of the proposed site. Consistent with the Ordinance, however, it was well within the Board's discretion to determine how wide a geographical area to consider in evaluating comparable uses. In addition, the Board could appropriately consider the impact other campgrounds had in their

11

own immediate areas as analogous to how compatible the Lauritzens' proposed campground would be with nearby residential properties.

¶24     Moreover, even if the Board had limited itself to considering the properties closest to the proposed site as the appropriate comparison area, it does not follow that the lack of other nearby campgrounds would preclude the conditional use permit.  The fact that a particular use may be dissimilar to other uses in the area does not compel the conclusion that it would be incompatible with other uses in the area or—more to the point—that it would detrimental to the public interest.

*C. Farmland Preservation Plan*

¶25     A staff report by Door County Land Use Services stated that the proposed site was located within the Town of Jacksonport "Core Area," but it was also designated as "Rural/Agricultural" for future land use under the Farmland Preservation Plan.  The Core Area designation in the Farmland Preservation Plan is defined as an area of existing built-up communities and planned expansion areas for potential future development.  The Farmland Preservation Plan states that areas designated as Rural/Agricultural for future land use are not planned for nonagricultural use within the next fifteen years.  The staff report suggested that agricultural and related operations in these areas should be protected by ensuring development is at low-density levels.

¶26     It appears that the Farmland Preservation Plan may be internally inconsistent, to the extent it designates the property both as part of the Core Area and also Rural/Agricultural.  That is, the proposed use may be consistent with the Plan with respect to appropriate uses for the Core Area, but inconsistent with the Plan with respect to appropriate uses for Residential/Agricultural areas.

¶27    We further note that the proposed site is zoned as "Mixed Use Commercial" under the Ordinance.  *See* DOOR COUNTY, WI, COMPREHENSIVE ZONING ORDINANCE § 2.03(17).   Campgrounds are identified as permissible conditional uses in Mixed Use Commercial zones.  *Id.*, § 2.05(3)(a).   The only agricultural uses permissible in Mixed Use Commercial zones are farm markets and greenhouses.  *Id.*   No other agricultural uses, including farming, are allowed in Mixed Use Commercial zones.  *Id.*

¶28    We again emphasize that the issue is not whether there was sufficient evidence to prove that the proposed campground was consistent with the Farmland Preservation Plan.  Rather, the issue is whether reasonable minds could conclude the proposed campground was not against the public interest, notwithstanding evidence that it may have conflicted to some degree with the Farmland Preservation Plan.  We are satisfied that reasonable minds could reach the conclusion that any conflict with the Farmland Preservation Plan was insignificant to the public interest, given the internal inconsistency in the Plan and, in any event, the fact that the land was not zoned for farming.

*D.  Safe Pedestrian Access*

¶29    The permit application stated that vehicular access to the campground would be through an existing driveway connecting to Bagnall Road, and that no sidewalks, paths, or other means of pedestrian access would be provided.    Multiple concerns were expressed during the administrative proceedings about the lack of safe pedestrian access to the proposed campground.  Navis asserts it was "almost universally agreed" due to a variety of factors— including the speed at which vehicles travel along Bagnall Road, a curve in the road reducing visibility near the entrance driveway, and narrow shoulders—that it

would not be safe for pedestrians to walk along Bagnall Road between the proposed campsite and downtown Jacksonport.

¶30    As a result, the Board imposed two conditions relating to vehicular and pedestrian safety.  First:

> The applicants shall submit a written petition to the Town of Jacksonport, within 45 days of the issuance of the conditional use permit, requesting the Town enact an ordinance to enforce the prohibition on making a left turn onto Bagnall Road when exiting the campground property. If the applicants fail to timely submit the written petition to the Town of Jacksonport, the conditional use permit will not remain in effect.  If the applicants timely submit the written petition to the Town of Jacksonport, but the Town fails to take substantive action within 12 months of the issuance of the conditional use permit, the conditional use permit will remain in effect.  The applicants must provide proof to the Door County Land Use Services Department that the written petition was timely submitted.

Second:

> The applicants shall submit a written request to the Wisconsin Department of Transportation (WisDOT), within 45 days of the issuance of the conditional use permit, asking the WisDOT to review the proposed development and determine whether any improvements should be made to increase safety of the Bagnall-Road and State Highway 57 intersection.  If the applicants fail to timely submit the written request to the WisDOT or the WisDOT fails to provide a substantive written response within 12 months of the issuance of the conditional use permit, the conditional use permit will not remain in effect. The applicants must provide proof to the Door County Land Use Services Department that the written request was timely submitted and that the WisDOT timely acted on the request.   If any improvements are recommended or required by the WisDOT, the applicants are responsible for implementation/installation of any improvements recommended or required by the WisDOT and the improvements shall be implemented/installed before the campground is open to the public.

14

¶31   Reasonable minds could conclude that the access point to the campground would be reasonably safe for pedestrians, and not contrary to public interest, if it complied with those conditions, including following any directives the Wisconsin DOT eventually issued.  We conclude that the Board's decision to grant the conditional use permit was supported by substantial evidence in the record.  Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).